No. 57,194

JAMES GERALD CHISM, *Appellant,* v. THE UNIVERSITY OF KANSAS COLLEGE OF HEALTH SCIENCES AND HOSPITAL and BOARD OF REGENTS OF STATE OF KANSAS, *et al., Appellees.*

(699 P.2d 43)

Opinion filed May 10, 1985.

*G. Edmond Hayes,* of Wichita, argued the cause and was on the brief for appellant.

*John C. McFadden,* special assistant attorney general, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is an action by James Gerald Chism against the University of Kansas School of Medicine, College of Health Sciences and Hospital (UKMC), the State Board of Regents, and individual members of the Academic Committee of UKMC, seeking his reinstatement as a medical student at UKMC, damages arising from his dismissal from UKMC, and payment of certain scholarship funds. Chism bases his claims on a wide variety of alleged violations of tort, contract, and civil rights law. The trial court granted summary judgment to Chism on his contract claim and awarded him $3,500.00. Summary judgment was granted to defendants on the balance of Chism's claims. Chism appeals from the adverse summary judgments.

The history of Chism's involvement with UKMC may be summarized as follows. Chism, a black man, was admitted as a student of UKMC in January, 1975, and began his academic course work in the summer of 1975. During his first year Chism failed both courses in which he was enrolled—Anatomy and

Biochemistry. Based upon these failures, Chism was notified in April, 1976, by the Academic Committee that it was recommending his dismissal and the matter was set for hearing. Chism appeared at the hearing and he was allowed to retake the courses.

In 1977 Chism failed Pharmacology but was allowed to take a remedial course and ultimately passed the same. Chism failed Part I of the National Medical Boards in September of 1977 and, again, in September of 1978. In September of 1978 he failed Part II of the National Medical Boards. Passage of both parts of the "Boards" is a requirement for graduation from UKMC. On January 4, 1979, the Dean's office notified Chism he had failed Basic Medicine Clerkship. On January 24, 1979, the Academic Committee again considered Chism's academic deficiencies. The Committee determined Chism should withdraw from the clinical modules in order to study for a retake of Part I of the Boards to be given in June of 1979. On January 26, 1979, the Dean notified Chism of the Committee's recommendation. The Dean further warned Chism that if he failed the June Board examination he would again be recommended for dismissal. Notwithstanding Chism's status as "an undergraduate student enrolled at UKMC" pursuant to K.S.A. 76-373 et seq., UKMC failed to pay Chism the $500.00 per month scholarship from January 31, 1979, through June 30, 1979, amounting to $2,500.00. The facts concerning this scholarship will be discussed in detail elsewhere in this opinion.

Chism failed Part I of the National Boards examination for the third time in June of 1979. Following notification of his failure, the Promotion Subcommittee of the Academic Committee again considered Chism's case and recommended his dismissal. In July of 1979, Chism was advised of the subcommittee's recommendation and of the availability of another hearing on the issue of his dismissal before the Academic Committee. Chism again exercised his right to appear before the Academic Committee considering his dismissal. The Committee voted to provide Chism with another chance at improving his academic record and he was allowed to resume his studies. Chism was officially notified of this decision in a letter dated August 28, 1979. Chism failed Part II of the National Boards in April of 1980—his second failure of that examination. He was then advised by the Academic Committee he would have to withdraw from the Precep-

torship course and study for Part I of the National Boards examination to be held June 10 and 11, 1980. UKMC did not pay Chism the $500.00 per month scholarship for May and June of 1980. Chism failed the Part I examination in June of 1980—his fourth failure of that portion of the examination.

By letter of August 6, 1980, the Promotions Subcommittee of the Academic Committee notified Chism it was recommending Chism's dismissal for the third time. Chism requested an opportunity to be heard and the meeting was set for August 28, 1980. Three days before the meeting Chism called Dr. David Waxman, Chief Executive Officer for UKMC, asking for permission to transfer to another medical school because his failure of the National Boards would result in dismissal from UKMC and loss of four years of course work. Chism was in Wichita and attempted to contact UKMC's Dean Lowman to delay the meeting. Those attempts were unsuccessful until the morning of said meeting. Chism claims he was not given an opportunity to advise the Dean his car had broken down that morning and he could not get to the meeting on time. He was told that his request for transfer would be submitted to the Committee. Chism failed to appear at that meeting. After a review of Chism's entire academic record, the Academic Committee voted by secret ballot to recommend his dismissal from school. In a letter from the Dean of the School of Medicine dated September 2, 1980, Chism was notified that he was no longer a student at the University of Kansas School of Medicine. No transfer could then be made by Chism after dismissal from UKMC as the Dean could no longer attach a letter stating that Chism was a student in good standing at the institution. This litigation was subsequently commenced by Chism seeking reinstatement to UKMC and damages.

Chism sought damages for breach of his scholarship contract, claiming UKMC had breached the scholarship contract by failing to pay seven monthly payments of $500.00 each for a total of $3,500.00. Before the trial court, UKMC contended the $3,500.00 was not owed under the terms of the contract.

In determining the contractual claims the trial court reasoned as follows in its memorandum opinion:

"Plaintiff was granted eligibility under the Kansas Medical Scholarship Program and entered into formal contracts between himself and the Medical School Dean. Under the contract of November 15, 1978, he was to receive $500 monthly

beginning July 1, 1978, through June 30, 1979. His second contract provided the same payment from September 1, 1979, to June 30, 1980.

"This contractual relationship is controlled not only by the terms of the contract but also by the provisions of K.S.A. 76-374-378 (1982 Supp.), which create and define the relationship. Consequently, we must consider the language of both the contract and the statute.

"The parties have disputed the exact terms of the contract. The plaintiff contends that the contract requires as a condition of the school's duty of payment only that the student be 'in good standing'. Whereas the defendant contends that an additional condition is that the student be 'duly enrolled'. As mentioned earlier, payments were withheld for five months in 1979 and two months in 1980 when plaintiff withdrew from classwork to study for the Boards. An examination of the contract itself clearly supports the position of the plaintiff. The terms of the contract can be divided into two distinct sections. The first, in pertinent part provides:

"The parties to the agreement acknowledge:
* * *

"That student is currently a duly enrolled University of Kansas Medical Student in good standing.

"This part of the contract is merely an acknowledgment by the parties of the student's status at the time the contract was entered into. The second section of the contract presents the consideration and covenants of the parties and provides in pertinent part:

"Therefore, in consideration of the mutual promises and benefits exchanged below, the parties agree to the following:
* * *

"2. University of Kansas Medical School further covenants to provide to student *** payments *** provided that student remains in good standing.

"The only condition stated in this second section in regard to the Medical School's duty to make the payments to the plaintiff is that the plaintiff remain in good standing. It is uncontroverted that the plaintiff was duly enrolled and in good standing when the contracts were entered into and it is also uncontroverted that the plaintiff was in good standing (e.g. not dismissed from the school) during the periods that monthly payments were withheld. The Medical School so certified on plaintiff's application to take the Boards. Consequently, the withholding of the payments was a wrongful breach of the Medical School's duty under the contract and the plaintiff is allowed to recover the amount withheld.

"Further, the parties have discussed the obligation of the plaintiff to repay the total amount loaned since the plaintiff did not obtain his medical degree and was therefore unable to perform his obligation under the contract to serve as a physician in an under-served area of Kansas. The legislature has anticipated this exact situation and has provided in K.S.A. 76-377[b] (Supp. 1983) that:

"An obligation to engage in the practice of medicine and surgery in accordance with an agreement under this act *shall be satisfied:*
* * *

"(4) if the person obligated fails to satisfy the requirements for a Degree of Doctor of Medicine after making his or her best efforts to obtain such degree;
* * *

"The above statute makes it clear that the legislature intended that a student in the position of the plaintiff should be relieved of his obligation so long as he has made his *best effort* to obtain his degree. In the instant case, the plaintiff worked to correct 'unsatisfactory' ratings in several areas and did, in fact, improve those ratings to 'satisfactory', and has satisfactorily completed the scholastic program necessary to obtain his degree. The fact that the plaintiff was unable to pass the National Board Exam after four tries does not abrogate an obvious 'best effort' by the plaintiff.

"Therefore, I hold that on the contract claims, the plaintiff has, by statute, satisfied his obligation under the contract and further, that the plaintiff is entitled to recover those amounts wrongfully withheld by the Medical School. Specifically: $2,500 under the contract dated November 15, 1978, and $1,000 under the contract dated September 18, 1979."

On appeal UKMC concedes the trial court correctly interpreted the contract and that the $3,500.00 is, indeed, owed to Chism. Chism, however, claims the trial court erred in basing the $3,500.00 award solely on breach of contract to the exclusion of his theories of tort and civil rights violations.

We find no error in the trial court's award of damages to Chism based on breach of contract. Chism and UKMC entered into a contract. UKMC withheld certain payments based upon its interpretation that said sums were not owed during the periods Chism was not "duly enrolled" in course work. Chism's interpretation of the contract required payments at all times he was a student in good standing at the institution (not dismissed). The dispute turned upon interpretation of the contract and is purely contractual in nature. We find no error in the trial court's entry of summary judgment in favor of Chism based upon breach of contract.

Next Chism claims error by the trial court in granting summary judgment in favor of the defendants on the balance of his melange of claims.

As we stated in *Willard v. City of Kansas City*, 235 Kan. 655, Syl. ¶¶ 1 and 2, 681 P.2d 1067 (1984):

"In considering a motion for summary judgment, the party against whom the motion is directed is entitled to the benefit of all reasonable inferences and doubts that may be drawn from the facts under consideration. Where genuine issues of material fact remain undetermined, the granting of summary judgment is improper.

"A party opposing summary judgment has an affirmative duty to take steps to provide evidence by way of deposition or affidavits in opposition to the motion or, if necessary, to request time to make additional discovery. The nonmoving

party cannot rely solely upon the allegations in his pleadings. He must come forward with something of evidentiary value to justify his position."

Chism contends defendants committed the tort of outrage upon him, conspired against him, violated his civil rights, and did various other egregious acts to his detriment. His strongest allegation of fact is the assertion that two other students received more favorable treatment relative to academic deficiencies and repeated failures of National Board examinations than did Chism. The complained-of preferential treatment of these two students occurred subsequent to the time Chism was dismissed. Neither had academic and National Boards examination histories identical to Chism's. Both such individuals, unlike Chism, appeared at the Academic Committee's meetings when the recommendations were to be made. In making its recommendation the Committee does not give the same weight to all failed courses—some are considered to weigh heavier than others by virtue of their content. Subjective as well as objective matters are considered in making recommendations. Mr. Chism is, understandably, disappointed and obviously angry that he did not graduate from UKMC, but these emotions do not equate to causes of action. Extensive discovery has been conducted in this case and nothing of evidentiary value has surfaced upon which these claims may be predicated. Instead, what emerges is a clear pattern of the defendants going to extreme lengths to assist Chism in completing the requirements for graduation from UKMC. An even earlier dismissal of Chism as a student of UKMC would have been justified by the record.

We conclude the trial court did not err in .entering summary judgment in favor of the defendants on all claims save that for breach of contract.

The judgment is affirmed.