JANICE C. BECK, *et al.*, *Appellants*, v. KANSAS ADULT AUTHORITY, BOARD OF REGENTS OF THE STATE OF KANSAS, UNIVERSITY OF KANSAS MEDICAL CENTER, *et al.*, *Appellees*,
and

No. 58,453

MYRTLE A. WILLIAMS, *et al.*, *Appellants*, v. KANSAS ADULT AUTHOR-ITY, BOARD OF REGENTS OF THE STATE OF KANSAS, UNIVERSITY OF KANSAS MEDICAL CENTER, *et al.*, *Appellees*.

(735 P.2d 222)

Opinion filed March 27, 1987.

*Ruth M. Benien,* of Shamberg, Johnson, Bergman & Goldman, Chartered, of Overland Park, argued the cause, and *David R. Morris* and *John E. Shamberg,* of the same firm, were with her on the briefs for the appellants.

*John C. McFadden,* special assistant attorney general, argued the cause and was on the briefs for the appellees Board of Regents of the State of Kansas and The University of Kansas Medical Center.

*Leon J. Patton,* assistant attorney general, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for the appellee Kansas Adult Authority.

The opinion of the court was delivered by

MILLER, J.: The plaintiffs bring these appeals from the entry of summary judgment and the sustaining of motions to dismiss in two related personal injury, wrongful death and survival actions, brought by the heirs of two victims and one of the witnesses to a shooting incident which occurred at the University of Kansas Medical Center emergency room on March 20, 1981. The separate actions were consolidated on appeal, and the appeals were transferred to this court under the provisions of K.S.A. 20-3018. The issues presented on appeal are: (1) Whether a state agency is considered a "person" under 42 U.S.C. § 1983 (1982) in an action for damages in a state court proceeding; (2) whether the University of Kansas Medical Center is immune from liability under the "discretionary function" or "police protection" exceptions to the Kansas Tort Claims Act, K.S.A. 75-6104(d) or (m); (3) whether, under the facts of this case, the trial court erred in treating the Kansas Adult Authority's motion to dismiss under K.S.A. 60-212 as a motion for summary judgment under K.S.A. 1986 Supp. 60-256; and (4) whether the Kansas Adult Authority is immune from liability under the discretionary function exception to the Kansas Tort Claims Act, K.S.A. 75-6104(d). The issues are applicable to both of the consolidated cases.

These cases arose when Bradley R. Boan, a disturbed former prisoner of the Kansas State Penitentiary and a former mental patient, entered the Kansas University Medical Center emergency room about 10 o'clock p.m. on March 20, 1981, fired three shotgun blasts, and then left the building. His first shot killed Marc R. Beck, a second-year resident physician. The second shot hit a wall but struck no persons. The third shot killed Ruth Rybolt, a visitor who was awaiting the results of a medical

examination performed on her mother. Ruby Shannon, Ruth Rybolt's sister, witnessed the shooting incident from a nearby examination room.

## THE CASE HISTORY

Plaintiffs timely commenced actions against the defendants here named, and others, in the United States District Court for the District of Kansas. For reasons not here material, plaintiffs dismissed the federal court actions against these defendants and within six months of the dismissal commenced these actions in the district court of Wyandotte County. Although more than two years elapsed between the time of the shooting and the commencement of these actions, they were timely filed. K.S.A. 60-518.

The Beck case was filed by Rodney D. Beck and Janice C. Beck, surviving father and mother and surviving heirs at law of Marc R. Beck, deceased; the administrator of his estate; his parents, individually; and his sisters, individually. The Williams case was filed by Myrtle A. Williams, surviving mother and heir at law of Ruth Rybolt, deceased; the administratrix of her estate; Ruby Shannon, individually; and Ruby Shannon, Harold Williams, Harrison Williams, Jr., and Harry Williams, individually and as the surviving sister and brothers of Ruth Rybolt, deceased. Remaining defendants in both cases are the Kansas Adult Authority, the Board of Regents, and the University of Kansas Medical Center. The Board of Regents and the Medical Center are treated as one entity, and we will refer to them both as the Medical Center in this opinion.

The petitions in the two actions consist of 80 or more paragraphs each, and are not the "short and plain statement of the claim" familiar in our notice pleading. However, we need not include here detailed summaries of the allegations contained in the petitions. We will first state briefly the basic claims advanced, and then refer to specific allegations later in this opinion as the need arises.

Count I in each of the petitions is a claim asserted under 42 U.S.C. § 1983, seeking damages against all of the defendants because of claimed acts, errors, and omissions, under color of

state law, which deprived Dr. Beck and Ruth Rybolt of rights protected by the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution. Count II is a claim for wrongful death by the surviving heirs at law of each decedent against all defendants based upon negligence. The contention is advanced that the Kansas Adult Authority negligently released Boan without conditions and necessary treatment and control; that the Medical Center negligently and carelessly failed to maintain and operate the emergency room facility in a condition reasonably safe for its use by personnel, staff, patrons, visitors, and others, and failed to warn them against known and foreseeable dangers; and that the medical center maintained or permitted to exist a public nuisance, the emergency room. Count III seeks damages for the personal injuries, emotional and psychological distress, mental anguish, anxiety, humiliation, degradation, pain, and suffering sustained by Dr. Beck and Ruth Rybolt during the time of survival. It seeks both actual and punitive damages against all defendants.

Count IV, found only in the Williams petition, is based on negligence. It seeks both compensatory and punitive damages on behalf of Ruby Shannon for the emotional and psychological distress, pain, and suffering which she sustained as a result of observing the killing of the two victims, one of whom was her sister.

All defendants filed motions to dismiss. Plaintiffs responded to the motions to dismiss, and in their response requested the opportunity to supplement their responses in the event the court decided to consider matters outside the pleadings in the determination of the motions and thus to treat them as motions for summary judgment. The trial judge notified counsel that he intended to rule on all motions to dismiss as motions for summary judgment. Plaintiffs immediately noticed up twenty-one individual deponents. Defendants moved for a protective order, and at a hearing held on April 4, 1985, all counsel being present, the trial court ruled that the motions to dismiss would be considered and ruled upon as motions to dismiss only and not as motions for summary judgment. The plaintiffs' notices to take depositions were then withdrawn and quashed, given the court's determination that the motions to dismiss would not be ruled

upon as motions for summary judgment. No depositions were taken in this case.

By a letter dated June 28, 1985, the trial court ruled upon and disposed of the motions. The letter reads, in pertinent part, as follows:

"I. Plaintiffs' claims under 42 USC 1983.

"An action under USC 1983 requires two allegations. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of a federal right acted under color of State or territorial law. *Beck v. Kansas University, Psychiatry Foundation*, 580 F. Supp. 527 ([D. Kan.] 1984) (the sister case to these actions pending in the federal court). The 10th Circuit has held that the University of Kansas, its teaching hospital and the hospital administrators, in their official capacities, are immune from lawsuits for money damages under 42 USC 1983. *Wrenn v. State of Kansas*, 561 F. Supp. 1216, 1219-20 (D. Kan. 1983). This trial Court so held and was affirmed in *[Chism v. University of Kansas Coll. of Health Sciences*, 237 Kan. 330, 699 P.2d 43 (1985)]. The plaintiffs have cited *Gumbhir v. Kansas State Board of Pharmacy*, 231 Kan. 507, 513 (1982) as standing for the proposition that the University is a person, however, *Gumbhir* is limited to the situation where prospective injunctive relief is sought. It does not apply where money damages are sought. Thus, while damages may be a permissible remedy against some State officers individually (where the officer acted beyond the scope of his authority), a plaintiff can seek no damages from the public treasury by suing State agencies. *Beck*, 580 F. Supp. 527, 538 (1984) (citing *Myers v. Anderson*, 238 U.S. 368, 35 S. Ct. 932 [1915]). The University of Kansas Medical Center is specifically excluded as a person under 42 USC 1983 in a claim for money damages because it is a governmental entity under the control of the State. . . .

"Whether the KAA is a person under Section 1983 has not been specifically addressed by Kansas, therefore it is necessary to look to decisions outside of this State. The Federal District Court of Pennsylvania has held that the State Board of Pardon and Parole is not a person under 42 USC 1983. *Reiff v. Pennsylvania*, 397 F. Supp. 345 (E.D. Pa., 1975) (minor shot during robbery by parolee). In a more broadly sweeping rejection of State agency liability, the Federal District Court in Delaware held that the State and its agencies are not persons within the meaning of Section 1983. The Court stated that the principal inquiry in determining whether a State agency is a person must be whether exposure of the particular entity to liability will substantially burden the State treasury or otherwise substantially hinder those operations over which the State has retained control. *Garr v. Delaware State Hospital*, 543 F. Supp. 268 (D.C. Del. 1982). In so much as the claim in the instant case is against the KAA as a State agency and not against its members in their individual capacity, recovery of monetary damages would necessarily come out of the State treasury. Consequently the KAA is not a person under Section 1983.

"The defendants in this action are all not 'persons' under 42 USC 1983 and therefore the motions to dismiss as to the Section 1983 claims against the

defendants are granted. By so determining the question of various plaintiffs' 'standing' to bring this claim under 42 USC 1983 becomes moot.

"II. Plaintiffs' claims under State law.

"Plaintiffs also claim that the defendants are liable under State tort law pursuant to the Kansas Tort Claims Act. Each defendant's liability shall be considered separately.

"A. The Kansas Adult Authority.

"Duty: The KAA claims that it did not owe a duty to the plaintiffs and thus there is no actionable claim for negligence. This position does not conform to the current law in Kansas. The Kansas Supreme Court has specifically adopted the Restatement (Second) of Torts Section 319, which states:

"One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm. *Cansler v. State*, 234 Kan. 554 (1984).

It is true that the injury did not occur in the instant case until after Boan would have been statutorily released, however, the full discharge of Boan on March 5, 1981, was effectuated by the determination of the KAA board that Boan's release was 'not incompatible with the best interest of society.' K.S.A. 22-3722. In making this decision the KAA owed a duty to the class of society as a whole, of which the plaintiffs are members. There exists then a question of fact as to whether the KAA breached that duty and knowingly or negligently released a dangerous individual prematurely into society. It is a question for the jury to determine whether those thirteen days between March 5, 1983 (the date of his full discharge) and March 18, 1983 (the date of his statutory discharge) are relevant to the injury which occurred on March 20, 1983.

"Immunity: The Kansas Supreme Court has stated that the Kansas Tort Claims Act, K.S.A. 1981 Supp. 75-6101, et seq., makes liability the rule and immunity the exception. K.S.A. 75-6103(a) states the general rule:

"Subject to the limitations of this act, each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this State.

There are limitations to this rule, however, and it is these under which the KAA claims immunity.

"The KAA claims immunity from liability under K.S.A. 75-6104(c)(d) and (m). K.S.A. 75-6104(c) provides immunity for actions of a governmental entity or employee acting within the scope of the employee's employment, where damages result from the 'enforcement of or failure to enforce a law . . . including, but not limited to, any statute, regulations, ordinance, or resolution.' The KAA argues that the release of Boan under the authority granted by the statutes and regulations of the State of Kansas is simply the enforcement of the valid laws of the State of Kansas. Such argument ignores, however, the fact that the authority granted is discretionary in nature and [is] governed specifically by K.S.A.

75-6104(d). Extension of K.S.A. 75-6104(c) to discretionary decisions would make subsection (d) mere surplusage which is contrary to statutory interpretation. *American Fidelity Ins. Co. v. Employers Mutual Casualty Co.*, 3 Kan. App. 2d 245 (1979).

"K.S.A. 75-6104(d) provides:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

"(d) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion be abused.

"The conditional release of Boan was determined by mathematical equation and involved no discretionary decision making. The conditional release is the enforcement of K.S.A. 22-3718 and thus protected by K.S.A. 75-6104(c). Although the actual release is not discretionary, the statute provides that the released inmate 'shall be subject to such written rules and conditions as the authority may impose . . .' and furthermore, K.S.A. 22-3722 provides that 'When an inmate on . . . conditional release has performed the obligations of his release for such time as shall satisfy the authority that his release is not incompatible with the best interests of society and the welfare of the individual, the authority may make a final order of discharge.' The KAA then is granted discretionary power to impose conditions upon the conditional release and to determine whether the inmate should be finally discharged before the maximum term or terms for which he was sentenced. In a Federal District Court ruling on this very case, Judge Saffels held that parole board members are entitled to qualified immunity. *Beck v. Kansas University Psychiatry Foundation*, 580 F. Supp. 527 ([D. Kan.] 1984). This means that the KAA does have a right to err, but not to act in bad faith. Therefore, if on the facts alleged before this Court, there is sufficient showing of possible bad faith then summary judgment must be denied. However, *viewing the facts in the light most favorable to the plaintiffs, there is no material question of fact as to the propriety of the KAA's action. There was no evidence before the board indicating any actions by Boan while on conditional release which would impute to the board any degree of bad faith in its discretionary decision.*

"The KAA did not act in bad faith, thus it is protected from liability under the provisions of K.S.A. 75-6104(d). The motion of KAA for summary judgment is granted.

"B. University of Kansas Medical Center.

"Plaintiffs claim that the University is liable due to the negligence of Dr. Charles Hartman, the Hospital Administrator, and Jack C. Pearson, Director of the University Police Department in failing to prevent an armed criminal from killing plaintiffs' decedents. An exception to such liability, however, can be found in K.S.A. 75-6104(m) which precludes claims based on the 'failure to provide or the method of providing police protection.' Since the University maintains a statutorily recognized law enforcement division, it is entitled to the same exception from liability as any municipal or State law enforcement agency. This is explicitly set forth in K.S.A. 76-726 which states that 'university police

officers shall have the same rights, protections and immunities afforded to other law enforcement officers.' The University is entitled to immunity pursuant to K.S.A. 75-6104(m).

"Furthermore, the University is immune from liability pursuant to K.S.A. 75-6104(d). The alleged liability is based on the actions of two department heads within an agency of the State of Kansas. There is no claim that either was acting outside the scope of his employment. Such governmental officials are shielded from liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Harlow v. Fitzgerald*, 102 S. Ct. 2727, 2738 (1982). The University then is immune from liability and the dismissal motion is granted.

. . . .

"Concluding, the motions to dismiss the various State agencies are sustained. This opinion will serve as the Journal Entry in both cases and be effective this date." (Emphasis supplied.)

It is from this order that plaintiffs appeal.

## I. THE 42 U.S.C. § 1983 CIVIL RIGHTS CLAIM

The first claim advanced by the plaintiffs is that the Kansas Adult Authority and the Kansas University Medical Center have violated their civil rights, and for this violation plaintiffs claim monetary damages under 42 U.S.C. § 1983 (1982). The first issue which we face, then, is whether a state agency is considered a "person" pursuant to 42 U.S.C. § 1983 in an action for damages commenced in the state courts. The trial court, as noted above, held that these state agencies were not persons under 42 U.S.C. § 1983, and therefore the trial court sustained the motions to dismiss as to the Section 1983 claims.

In the case of *Gumbhir v. Kansas State Board of Pharmacy*, 231 Kan. 507, 646 P.2d 1078 (1982) (*Gumbhir II*), we held that the Kansas State Board of Pharmacy, a state agency, was a "person" under the provisions of 42 U.S.C. § 1983, and was subject to suit in an action thereunder in which the plaintiffs sought only prospective injunctive relief. In the same action, we had earlier held unconstitutional a portion of the Pharmacist Registration Statute, K.S.A. 1979 Supp. 65-1631(a), and we directed the Board of Pharmacy to reconsider Gumbhir's application for leave to take the examination for registration as a pharmacist, or to be admitted by reciprocity. *Gumbhir v. Kansas State Board of Pharmacy*, 228 Kan. 579, 618 P.2d 837 (1980) (*Gumbhir I*).

In *Gumbhir II*, we discussed in some detail the decisions of

the federal courts holding that state agencies were or were not "persons" under Section 1983. See 231 Kan. at 512-13.

We have never held that state agencies were persons under 42 U.S.C. § 1983 for the purpose of suits seeking damages thereunder. The State has consented to suit for damages under the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.*, but that act does not contain the consent of the State to the filing of actions for damages against it under Section 1983. (The State of Kansas has not waived its sovereign immunity from suits seeking monetary damages under 42 U.S.C. § 1983.) We have reviewed many of the opinions of our sister state courts dealing with this issue, and find them sharply divided. A review of those opinions would add length but not substance to this opinion. We have carefully considered the issue, and hold that, while the State of Kansas is a person for the purposes of Section 1983 actions wherein injunctive relief is sought, the State has not waived its sovereign immunity from suits seeking damages under that section. The trial court was correct in dismissing the Section 1983 claims as against these defendants.

## II. LIABILITY OF THE MEDICAL CENTER

The second issue on appeal is whether the Medical Center is immune from liability under the "discretionary function" or the "police protection" exceptions to the Kansas Tort Claims Act, K.S.A. 75-6104(d) or (m). The trial court, in the two paragraphs immediately following the heading "B. University of Kansas Medical Center," in its order quoted above, found that the Medical Center was immune under both exceptions. K.S.A. 75-6104(d) and (m) read as follows:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(d) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion be abused;

. . . .

"(m) failure to provide, or the method of providing, police or fire protection."

The petitions allege that the Medical Center and its agents, the director of emergency services and the director of security, failed

to maintain and operate the emergency room facility in a condition reasonably safe for its use by personnel, patients, visitors, and guests; failed to warn them of known or foreseeable dangers; and failed to take necessary or proper precautions to prevent the violent and foreseeable acts of Boan. Plaintiffs emphasize that this claim is based upon a violation of the premises doctrine; that Dr. Beck as an employee, and Ruth Rybolt and Ruby Shannon as visitors, were business invitees, and thus the Medical Center owed them a duty to use ordinary care to keep the premises in a reasonably safe condition, and to warn the invitees of dangerous conditions upon the premises of which the Medical Center knew, or should have known by the exercise of ordinary care. See *Gerchberg v. Loney*, 223 Kan. 446, 576 P.2d 593 (1978).

Before a governmental entity can be liable for damages, there must be (1) a negligent or wrongful act or omission by one of its employees; and (2) the employee (a) must be acting within the scope of his or her employment, and (b) under circumstances where the government or entity, if a private person, would be liable under the laws of this state. K.S.A. 75-6103; *Hopkins v. State*, 237 Kan. 601, 609, 702 P.2d 311 (1985). There is no claim that any of the Medical Center's employees acted outside of the scope of their employment.

This is not a case in which the damage is alleged to have been occasioned by the physical condition of the premises. There was no slippery substance on the floor, no loose tread on the stair, no dangerous hole into which a person fell. The negligent acts complained of consist only of the failure to provide more adequate police protection, and the failure to warn. As to the failure to warn, Boan entered the emergency facility, fired three shots, and left. There is no claim in the petition that the employees of the hospital knew Boan was coming or saw Boan coming in with the shotgun and had time to warn plaintiffs' decedents. The case is somewhat like that of *Harvey v. Van Aelstyn*, 211 Neb. 607, 319 N.W.2d 725 (1982), where the assailant, immediately after entering a tavern, attacked the plaintiff without warning. The owner, a private person, had no reasonable opportunity to restrain the assailant or to give warning.

As to the duty to warn, plaintiffs rely on *Cansler v. State*, 234 Kan. 554, 675 P.2d 57 (1984), which held that the failure of the

State to give prompt warning to nearby law enforcement agencies upon the escape of seven dangerous and armed convicts from the Kansas State Penitentiary constituted a breach of a common-law duty and was not a failure to provide "police protection," exempt under Section 6104(m). In that case, however, we held that the duty to warn was not solely a law enforcement or police protection function, but was a common-law duty imposed upon all who take charge of persons extremely dangerous to others.

In the present case, the Medical Center did not take charge of Boan and did not have custody or control over him at any time after his release from the penitentiary or at the time he entered the Medical Center with shotgun in hand. Therefore, the common law did not impose upon the Medical Center the duty to warn which was found applicable in *Cansler*.

Similarly, simply because Boan had assaulted Medical Center personnel some years before, such remote acts would not form a basis upon which the Center could reasonably be expected to have anticipated this occurrence, taken steps to prevent or forestall it, or warned all persons who came into its building that Boan might strike at any time. *Gould v. Taco Bell*, 239 Kan. 564, 722 P.2d 511 (1986), is distinguishable upon the facts.

Security at the Medical Center is maintained by University police officers, as provided by K.S.A. 76-726. That statute provides that University police officers shall have the power and authority of law enforcement officers on property owned or operated by the state educational institution. In the performance of their duties, such officers have the same rights, protections, and immunities afforded to other law enforcement officers.

The trial court found that since the Medical Center maintains a statutorily recognized law enforcement division, it is entitled to the same exceptions from liability as any municipal or state law enforcement agency. The police protection exception, quoted above, excepts from liability the "failure to provide or method of providing police or fire protection." We discussed the aims of the police and fire protection exception in *Jackson v. City of Kansas City*, 235 Kan. 278, 292, 680 P.2d 877 (1984), saying:

"We believe subsection (m) is aimed at such basic matters at the type and number of fire trucks and police cars considered necessary for the operation of

the respective departments; how many personnel might be required; how many and where police patrol cars are to operate; the placement and supply of fire hydrants; and the selection of equipment options. Accordingly, a city is immunized from such claims as a burglary could have been prevented if additional police cars had been on patrol, or a house could have been saved if more or better fire equipment had been purchased. We do not believe subsection (m) is so broad as to immunize a city on every aspect of negligent police and fire department operations. Should firemen negligently go to the wrong house and chop a hole in the roof thereof, we do not believe the city has immunity therefor on the basis the negligent act was a part of the method of fire protection."

The determination of how to provide police protection is immunized. The Medical Center is not liable because of the methods it adopted for police protection. Unlike *Cansler*, if the officers at the Medical Center were aware of a risk of injury from Boan, any duty to warn would have been a law enforcement or police protection function. It would be the function of the University police to implement a warning system effective in warning all individuals in the Medical Center. Nothing in the petitions indicates that Boan was a patient or visitor in the Medical Center at any time after his release from the penitentiary until the fatal day. Boan threatened to commit or committed acts of violence at the Medical Center some years before the present incident, but there is no claim that the University police or any other employees of the Medical Center knew or should have known, immediately prior to the March 20 shooting incident, that Boan was armed and approaching the emergency facility. Both the duty to protect and the duty to warn, on the facts alleged, thus fall within the police protection exception, and we hold that the trial court was correct in finding the Medical Center immunized from liability pursuant to K.S.A. 75-6104(m). In light of this holding, we need not reach the discretionary function exception in relation to the claims against the Medical Center.

## III. THE ORDER OF SUMMARY JUDGMENT

The third issue is whether the trial court erred in treating the Kansas Adult Authority's motion to dismiss as a motion for summary judgment. K.S.A. 60-212(b)(6) provides for the filing of a motion to dismiss for failure to state a claim upon which relief can be granted. The statute also provides that:

"If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the

pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in K.S.A. 60-256, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by K.S.A. 60-256."

K.S.A. 60-256, now K.S.A. 1986 Supp. 60-256, provides for the service of a motion for summary judgment with or without supporting affidavits. The adverse party may serve opposing affidavits. The statute then provides:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The rule governing the disposition of motions to dismiss was discussed in the case of *Dutoit v. Board of Johnson County Comm'rs*, 233 Kan. 995, 998, 667 P.2d 879 (1983):

"The dismissal in this case was pursuant to K.S.A. 60-212(b)(6), failure to state a claim upon which relief can be granted. The case of *Weil & Associates v. Urban Renewal Agency*, 206 Kan. 405, Syl. ¶ 2, 479 P.2d 875 (1971), states the standard for this type of dismissal:

" 'Disputed issues of fact cannot be resolved or determined on a motion to dismiss for failure of the petition to state a claim upon which relief can be granted. The question for determination is whether in the light most favorable to plaintiff, and with every doubt resolved in his favor, the petition states any valid claim for relief. Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim.'

The court is under a duty to examine the petition to determine whether its allegations state a claim for relief on any possible theory. *Monroe v. Darr*, 214 Kan. 426, 430, 520 P.2d 1197 (1974). It is not necessary to spell out a legal theory of relief so long as an opponent is apprised of the facts that entitle the plaintiff to relief. *Febert v. Upland Mutual Ins. Co.*, 222 Kan. 197, 199, 563 P.2d 467 (1977)."

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court must give the benefit of all inferences which may be drawn from the admitted facts to the party against whom summary judgment is sought. The trial court must search the record to determine whether issues of material fact do exist. A mere surmise or belief by the trial court, no matter how reasonably entertained, that a party cannot prevail upon trial, will not justify refusing that party his day in court.

When summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment. *Moore v. State Bank of Burden*, 240 Kan. 382, 385-86, 729 P.2d 1205 (1986); *Barnhart v. McKinney*, 235 Kan. 511, Syl. ¶¶ 1, 2, 682 P.2d 112 (1984); *McAlister v. Atlantic Richfield Co.*, 233 Kan. 252, Syl. ¶¶ 1, 2, 3, 4, 662 P.2d 1203 (1983); *Ebert v. Mussett*, 214 Kan. 62, 65, 519 P.2d 687 (1974); *Lawrence v. Deemy*, 204 Kan. 299, 301-02, 461 P.2d 770 (1969).

The important distinction between the handling of a motion to dismiss on the one hand and a motion for summary judgment on the other is that in the former the trial court is limited to a review of the pleadings, while in the latter, the trial court takes into consideration all of the facts disclosed during the discovery process—affidavits, depositions, admissions, and answers to interrogatories. Thus, a party opposing a motion for summary judgment may point to or provide depositions, affidavits, or other documents to demonstrate that there are genuine issues of material fact, necessitating a trial.

In order to preclude summary judgment, the facts subject to dispute must be material to the conclusive issues in the case. As the United States Supreme Court recently said in *Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574, 585-87, 89 L. Ed.2d 538, 106 S. Ct. 1348 (1986):

"To survive petitioners' motion for summary judgment, respondents must establish that there is a genuine issue of material fact . . . .

"Second, the issue of fact must be 'genuine.' Fed Rule Civ Proc 56(c), (e). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. [Citations omitted.] In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.' [Citations omitted.] Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' "

We expressed a similar point of view in *Moore v. State Bank of Burden*, 240 Kan. 382. There, although the party opposing the motion disagreed over some minor factual detail, the material facts were undisputed and we upheld the entry of summary judgment.

Ordinarily a motion for summary judgment should not be

sustained so long as discovery is incomplete. *Lostutter v. Estate of Larkin*, 235 Kan. 154, 165, 679 P.2d 181 (1984); *Brick v. City of Wichita*, 195 Kan. 206, 211, 403 P.2d 964 (1965).

Plaintiffs contend that they were prejudiced by the trial court's ruling of April 4, 1985, that the motions would be treated as motions to dismiss, when in fact the court ruled on the motions as motions for summary judgment. The trial court viewed the facts in the light most favorable to the plaintiffs, and found that there was no material question of fact as to the propriety of the Authority's action. The court also found that there was no evidence before the Authority indicating any actions by Boan while on conditional release which would impute to the Authority any degree of bad faith in its discretionary decision. Plaintiffs argue that the facts which were before the Authority were never developed, since plaintiffs, in reliance upon the trial court's order, withdrew their deposition notices, and there was no discovery in this case to develop those facts.

The Authority contends that the trial court was correct for the wrong reason. Basically, the Authority argues that the trial court's finding of qualified immunity was based on Judge Saffels' opinion in *Beck v. Kansas University Psychiatry Foundation*, 580 F. Supp. 527 (D. Kan. 1984). Judge Saffels found that the members of the Adult Authority were entitled to qualified immunity, but his analysis was made under the common law as it applied to the civil rights claims under 42 U.S.C. § 1983 (1982), and not under the discretionary function exception to the Kansas Tort Claims Act. The Authority contends that the trial court here found that the Authority did not have a right to act in bad faith when, it claims, it is not liable for any claim based on the discretionary function, whether or not discretion is abused.

Our cases do not agree that the discretionary function exception grants absolute immunity. In *Hopkins v. State*, 237 Kan. 601, 611, 702 P.2d 311 (1985); we said:

"Neither the courts nor our legislature, in passing the act, extended the mantle of immunity beyond the boundaries of protection previously recognized under the common law. Under the common law, personal liability was imposed on officers who maliciously or wantonly injured a person or his property even though the officers were engaged in a governmental function."

Plaintiffs argue that if their claims were to be dismissed on the

basis that there was no evidence before the Authority, the trial court should have known what was in fact before the Authority. Further, they contend that if the Authority failed to consider any of the criteria set forth in the statute, it is a question of gross negligence from which the Authority is not immune, and that is a fact question for the jury. Plaintiffs also contend that their depositions, subsequently taken in the federal companion case, provide substantial evidence of bad faith. Those depositions were not before the trial court, and we do not reach them here.

In the petitions, plaintiffs allege:

"45. On or about August, 1977, Bradley R. Boan had been convicted and sentenced to prison for the commission of an aggravated assault against a staff member of the defendant University of Kansas Medical Center.

"46. From on or about October, 1977 and until on or about March, 1980, Bradley R. Boan was confined at the Kansas State Penitentiary at Lansing, Kansas and was under the care, custody and control of the Department of Corrections for the State of Kansas.

"47. On or about March, 1980, the defendant Kansas Adult Authority granted Bradley R. Boan a release from his incarceration.

"48. The defendant Kansas Adult Authority allowed and ordered said release of Bradley R. Boan to occur, despite the fact that they knew or should have known of his foreseeable propensity for violence, his inability to function in open society, his need for and apparent lack of treatment while incarcerated, his recurrent loss of contact with and distortion of reality, and his danger to himself and the public in general and the University of Kansas Medical Center, its emergency room, its staff, personnel, agents, servants, employees, patients, patrons and visitors, in particular.

"49. In so releasing Bradley R. Boan, the defendant Kansas Adult Authority specifically failed, refused to fulfill or inadequately fulfilled their individual, official and other duties, as previously set forth herein, and each of them, in allowing, refusing or failing to prevent, intervene or protect against, the commission of aforesaid violent acts or omissions, acted in bad faith, with reckless and callous disregard for the rights of others, were grossly and wantonly negligent and exhibited intentional and deliberate indifference to the foreseeable violent and dangerous propensities posed by Bradley R. Boan and to the rights of the above-named plaintiffs, and each of them."

The Authority filed a motion to dismiss, and later an amended motion to dismiss. These motions simply ask for dismissal of the claims of tort and constitutional violations alleged by the plaintiffs against the Authority. The motion is supported by a written brief or memorandum. No answer has been filed by the Authority, and no affidavits accompany the motions to dismiss. Thus the

claims asserted in the petitions, as set forth above, have not been specifically denied.

Under the circumstances, we hold that the trial court erred in entering summary judgment, based upon the insufficiency of the facts and the "evidence before the Board," prior to the time the facts had been developed by discovery or otherwise. Our ruling on this issue is not, however, dispositive.

## IV. LIABILITY OF THE KANSAS ADULT AUTHORITY

We turn now to the final issue, whether the Kansas Adult Authority is immune from liability under the discretionary function exception to the Kansas Tort Claims Act, K.S.A. 75-6104(d). The trial court, in granting summary judgment, found that the Authority was not liable because its decision fell within the "discretionary function" exception to the Kansas Tort Claims Act. The trial court correctly noted that Boan's conditional release was determined by mathematical computation, involving no discretionary decision-making on the part of the Board. Conditions of release and final discharge prior to the expiration of an inmate's term, however, are discretionary. K.S.A. 1986 Supp. 22-3718, -3722.

K.S.A. 1986 Supp. 22-3717 fixes parole eligibility dates. These vary, depending upon the severity of the offense, the classification of the crime, and the credits to which an inmate is entitled. "Good time credits" are credits, formerly established by rules and regulations of the Kansas Adult Authority and now provided by statute, K.S.A. 1986 Supp. 22-3717(o). These consist of one day's credit for every three days served, and one month for every year served, awarded on an earned basis pursuant to the rules and regulations adopted by the Secretary of Corrections. Additionally, certain meritorious good time credits may be earned. K.S.A. 1986 Supp. 22-3717(p). Once an inmate has served to his parole eligibility date, he is entitled to meet with the Kansas Adult Authority and may, at the discretion of the Authority, be placed on parole.

Conditional release, however, is distinguishable from parole. An inmate who serves the maximum term or terms of his sentence, less "such work and good behavior credits as have been earned," is entitled to be released from custody. Boan was such

an inmate. He was not granted a parole by the Kansas Adult Authority; instead, he was required to serve to his conditional release date, and he was then released from custody. K.S.A. 22-3718, in effect at that time, read as follows:

"An inmate who has served his maximum term or terms, less such work and good behavior credits as have been earned, shall, upon release, be subject to such written rules and conditions as the authority may impose, until the expiration of the maximum term or terms for which he was sentenced or until he is otherwise discharged."

Thus, at the time Boan was placed on conditional release, the Authority was authorized by statute to require him to be subject to such written rules and conditions as the Authority might choose to impose, up until the expiration of the maximum term or terms for which he was sentenced, or until he was otherwise discharged. The release of an inmate on parole is discretionary with the Authority; the release of an inmate on conditional release is not discretionary but is required by law, once the maximum term of imprisonment, less earned credits, has been served. However, the Authority is authorized to impose written rules and conditions upon a prisoner placed upon conditional release; the determination of whether or not to impose conditions and the extent of such conditions is discretionary.

We have discussed the discretionary function exception several times. In *Robertson v. City of Topeka*, 231 Kan. 358, 644 P.2d 458 (1982), the issue was whether police officers were exercising a discretionary function when they refused to remove a drunken trespasser from the owner's property. We rejected the "planning level-operational level test," and held that the determining factor was the nature and quality of the discretion exercised rather than the status of the employee. We held that the decision of the officers was an on-the-spot exercise of discretion, and thus plaintiffs' claim fell within the discretionary function exception.

In *Carpenter v. Johnson*, 231 Kan. 783, 649 P.2d 400 (1982), we again held that whether an act is discretionary depends upon the totality of the circumstances. We held in that case that a placement of warning signs on a roadway was an exercise of professional judgment within established guidelines, rather than the exercise of discretion, and thus the discretionary function ex-

ception was not applicable. In *Cansler v. State*, 234 Kan. 554, 675 P.2d 57 (1984), we considered the plaintiff's claim for injuries resulting from the escape of armed and dangerous prisoners from the penitentiary. No warning was given to law enforcement officers in neighboring communities. We held that the duties to confine and to warn were imposed by law and were ministerial, not discretionary. The plaintiff's claim was not based on how the State decided to confine or warn, but the State's failure to do so. We held the claim was not barred by the discretionary function exception. In *Jackson v. City of Kansas City*, 235 Kan. 278, 680 P.2d 877 (1984), we considered an action arising upon a collision between two city fire trucks on an emergency run to the same fire. We found that the duty of the fire truck drivers is set forth in various statutes, regulations, and ordinances of the city. Disregard of those statutes, departmental policies, and regulations was not within the discretionary function exception. See *Fudge v. City of Kansas City*, 239 Kan. 369, 720 P.2d 1093 (1986); *Finkbiner v. Clay County*, 238 Kan. 856, 714 P.2d 1380 (1986); *Hopkins v. State*, 237 Kan. 601; *Toumberlin v. Haas*, 236 Kan. 138, 689 P.2d 808 (1984).

We set out earlier in this opinion the specific allegations that plaintiffs make in their claims against the Kansas Adult Authority. They contend that the Authority allowed and ordered the release of Boan, despite the fact that it knew or should have known of his foreseeable propensity for violence; his inability to function in open society; his need for and apparent lack of treatment; his recurrent loss of contact with and distortion of reality; and his danger to himself and the public in general, and the Medical Center, its emergency room and its patients, personnel, and visitors, in particular. They contend that the Authority specifically failed to fulfill its official duties, and that its actions were in bad faith, with reckless disregard for the rights of others, and were grossly and wantonly negligent.

The regulations relating to conditional release, adopted by the Kansas Adult Authority and in effect at the time of Boan's release, provided as follow:

"Article X. Conditional Release

"45-10-1. **General provisions.** (a) An inmate shall be granted conditional release when he or she has served the maximum sentence less statutory authorized good time credits as provided under K.A.R. 45-2-1(b).

"(b) Conditional releasees may be placed under mandatory in-state parole supervision for approximately ninety (90) to one hundred eighty (180) days, as determined by the authority and upon the recommendation of the unit team or designated institutional officials. Extended supervision may be allowed, but not to exceed the maximum term, on approval of the authority and based on the supervising parole officer's recommendation. Conditional releasees may be subject to the same terms and conditions as all other parolees while under supervision. If probable cause is established that a conditional releasee has violated the conditions of release, he or she may be returned to confinement upon determination of the secretary and thereafter, subject to the final hearing and order of the authority, considered in the same manner as a parole violator.

"(c) Institutional staff shall notify the authority of any conditional releasee who has not been discharged from mandatory supervision and is returned to confinement with a new felony crime, and the authority shall determine whether or not he or she shall be docketed for a violator hearing." K.A.R. 45-10-1.

### K.A.R. 45-11-1(c) also provided:

"(c) *Conditional release cases.* Inmates who have been ordered to serve to conditional release shall be considered for discharge, unless adverse reports are received, one (1) year after release unless the maximum sentence date expires sooner."

The plaintiffs admit that the trial court's ruling that the actual physical release of Boan by the Authority was protected by the "enforcement of laws" exception was correct, if Boan's release time was correctly calculated. Plaintiffs argue that the release was not properly calculated. However, the granting of good time and meritorious good time credits, and the calculation of the time actually served by an inmate in the custody of the Department of Corrections are the functions of the Secretary of Corrections, not the Kansas Adult Authority. Neither the Secretary of Corrections nor the Department of Corrections are defendants in this action. We conclude that the calculation of Boan's conditional release date is not an issue in this litigation. His release by the Authority upon conditional release was not discretionary but was required by law. It is therefore excepted from liability by K.S.A. 75-6104(c), as the "enforcement of or failure to enforce a law."

As we noted earlier, the matter of the imposition or nonimposition of conditions is a discretionary matter. The discretionary function exception, K.S.A. 75-6104(d), exempts from liability "the exercise or performance *or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion be abused.*" (Emphasis added.)

In *Hopkins v. State*, 237 Kan. at 611, we said:

"The exceptions to liability of a governmental entity or employee set out in 75-6104 are not without limitations. Only negligent or wrongful acts or omissions of employees are excepted from liability by 75-6104, while acts or omissions involving more than the lack of ordinary care and diligence are not.

. . . .

"Neither the courts nor our legislature, in passing the act, extended the mantle of immunity beyond the boundaries of protection previously recognized under the common law. Under the common law, personal liability was imposed on officers who maliciously or wantonly injured a person or his property even though the officers were engaged in a governmental function."

Negligence is the lack of ordinary care under the existing circumstances. It is the failure of a person to do something that an ordinary person would do, or the act of a person in doing something that an ordinary person would not do, measured by all of the circumstances then existing. The degree of care must be equal to the danger reasonably to be anticipated, measured by all of the facts and circumstances. PIK Civ. 2d 3.01, 13.01.

A willful act involves an intentional act and intentional injury. A wanton wrong involves an intentional act but not an intentional injury; the act is intentional and purposeful, but the consequences of the act are not. Wanton conduct is distinguished from a mere lack of due care by the fact that the actor realizes the imminence of injury to others from his acts and refrains from taking steps to prevent the injury. This reckless disregard or complete indifference rises substantially beyond mere negligence. *Bowman v. Doherty*, 235 Kan. 870, 876, 686 P.2d 112 (1984) (citing PIK Civ. 2d 3.02 and *Kniffen v. Hercules Powder Co.*, 164 Kan. 196, 188 P.2d 980 [1948]).

The plaintiffs' complaint against the Authority, quoted at length earlier in this opinion, is simply that the members of the Authority released Boan from custody "when they knew or should have known of his foreseeable propensity for violence"; his mental condition; his lack of treatment while in the penitentiary; and his danger to himself, the general public, and the Medical Center and its occupants in particular. The Authority had no choice but to release Boan from custody. Whether it imposed conditions upon that release, such as use of medication, referral to mental health practitioners or hospitals, and directives

that he not visit the Medical Center, was discretionary with the Authority. K.S.A. 22-3718.

A somewhat similar case is that of *Payton v. United States*, 679 F.2d 475 (5th Cir. 1982). A federal prisoner, alleged to be a homicidal psychotic, was released on parole by the United States Board of Parole. He murdered three women, including plaintiffs' decedent. The Fifth Circuit heard the matter en banc. The issue before the court, insofar as material here, was whether the alleged conduct by personnel of the United States Board of Parole comes within the provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671-2680 (1976) or is exempt as a "discretionary function." The court held: (1) the actual decision to grant or deny parole is within the complete discretion of the parole board; (2) the terms of the parole are within the discretion of the parole board (while the board could have provided for continued supervision of [the parolee] during his parole, and although failure to do so might appear to be an abuse of discretion, the decision was discretionary and therefore is excluded from the FTCA by 28 U.S.C. § 2680); and (3) a claim that the board failed to acquire, read, or give adequate consideration to the prisoner's records is inexplicably tied to the board's ultimate decision, and thus addresses the board's exercise of its discretionary function. The court concluded that all three claims against the parole board were exempt. In discussing the third claim, the court said:

"To withstand a motion to dismiss, an allegation challenging the Board's performance of any ministerial act must be sufficiently distinguishable from a complaint disputing the Board's exercise of its discretionary function. The plaintiff must therefore allege that the Board breached a duty sufficiently separable from the decision-making function to be nondiscretionary and outside of the exception. The plaintiff may not withstand a motion to dismiss by alleging that the Board's decision was wrong.

"We therefore find insufficient the allegation that the Parole Board failed to acquire, read, or give adequate consideration to these records. The acquisition and examination of the records on which the Board bases its ultimate decision necessarily implicates its discretionary function. In fulfilling this task, the Board must exercise its judgment by determining the materiality of certain studies and documents and the propriety of relying thereon in reaching its final assessment. Further, the manner and degree of consideration with which the Board examines these materials is inextricably tied to its ultimate decision. This allegation thus addresses the Board's exercise of its discretionary function. For these reasons we hold that the trial court properly dismissed Count III." 679 F.2d at 482.

The issues in *Payton,* like those presented by the case before us, were obviously difficult for the Court. There were strong differences of opinion. The trial judge, Chief Judge Virgil Pittman of the Southern District of Alabama, dismissed for lack of jurisdiction. *Payton v. United States,* 468 F. Supp. 651 (S.D. Ala. 1979). A panel of the Fifth Circuit reversed and remanded. *Payton v. United States,* 636 F.2d 132 (5th Cir. 1981). Rehearing en banc was granted, resulting in a reversal in part, an affirmance in part, and a remand to the trial court. The majority opinion was written by Judge Joseph W. Hatchett, now of the 11th Circuit. Five separate opinions, each dissenting in part and concurring in part, and some joined in by other judges, were written by Judges Roney, Tjoflat, Fay, Kravitch, and Clark. These may be found in 679 F.2d at 483-94.

Another case bearing some similarity to the case at hand is *Lloyd v. State,* 251 N.W.2d 551 (Iowa 1977), 6 A.L.R.4th 1143. This was an action by two persons who had been injured by a former state prisoner who had allegedly been negligently released by the Iowa Director of the Bureau of Adult Correction. The action was brought under the Iowa Tort Claims Act. Section 25A.14(1) of that act provides that the act shall not apply to:

"Any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion be abused." Iowa Code Ann. § 25A.14(1) (West 1978).

The Iowa statutes contained a provision that when the state director has reason to believe that a prisoner whose sentence has expired is mentally ill, the director should cause the prisoner to be examined, and thereafter the director could cause the prisoner to be transferred to a mental hospital or be confined in the Iowa security medical facility. Plaintiffs claimed that the director was negligent in releasing the prisoner from custody. The Iowa Supreme Court held that the courts lack jurisdiction to hear a claim which falls under one of the exceptions to the Iowa Tort Claims Act. It then determined that the decision of whether to commit a prisoner and where to have him committed is within the director's descretion. Since the release, rather than a transfer to a mental hospital, was discretionary, the claim falls under the

discretionary function exception. The court concluded that the trial court had no jurisdiction, and the case must be dismissed.

There have been a number of recent cases in other jurisdictions, and the rulings are diverse. See Annot., 5 A.L.R.4th 773; Annot., 6 A.L.R.4th 1155; Note, *Parole Board Liability for the Criminal Acts of Parolees*, 8 Cap. U. L. Rev. 149 (1978). Further review of the cases from other jurisdictions would not be particularly helpful here.

Although plaintiffs characterize the actions or omissions of the Authority as reckless, grossly and wantonly negligent, and as exhibiting intentional and deliberate indifference to the consequences, the claim is founded upon the Authority's release of Boan from custody, without imposing conditions upon him and without attempting to enter him in a mental hospital or otherwise securing mental treatment for him. The failure of a parole authority to carefully review all of the available records, the failure to send for other records which could have been secured, and the failure to take action which a thorough post-release review of the records would indicate were warranted, if true, may be negligence, but it is simply an exercise or failure to exercise a discretionary function or duty. It is the kind of activity of a state agency which is specifically exempted from the provisions of the Kansas Tort Claims Act.

We do not believe that the legislature, in enacting the Kansas Tort Claims Act, intended to subject parole or probation decisions of the authorities, whether the Kansas Adult Authority or the sentencing judge, to litigation in order to determine whether the Authority or judge turned every tap and jumped through every hoop in arriving at a decision to place an inmate on parole or to impose conditions on a conditional release. It is these discretionary functions of state agencies or employees which the legislature intended to place beyond the pale of tort litigation.

The possibility of harm to third persons exists every time a prisoner convicted of violent crime is released from custody and placed back into society, yet the time always arrives when release must be effected. A decision as to the imposition of conditions, if any, must be made. Such a decision involves the exercise of great discretion. Boan *had* to be released, under state law. Whether conditions might have been imposed which would

have prevented this catastrophe is an open question. Hindsight, always better than foresight, indicates some conditions *might* have had some effect. But such a decision, made now, would merely second-guess the parole authority, the agency in whose hands the legislature entrusted the discretion.

The plaintiffs have suffered an enormous wrong. We do not overlook their plight and we cannot but sympathize with them. However, fashioning a remedy to permit the State to be sued when a probationer, parolee, or conditional releasee appears to have been either improvidently released or released with insufficient safeguards and conditions, and while on such release commits a tort, is a matter for the legislature and not the courts.

The trial judge, at the conclusion of his letter memorandum and order, stated that he was sustaining the *motions to dismiss* the various state agencies. The petitions, read in the light most favorable to the plaintiffs, claim an abuse of discretion by the Kansas Adult Authority in releasing Boan. Such an action is not viable in light of K.S.A. 75-6104(d), the discretionary function exception.

The judgment of the trial court is affirmed.

ALLEGRUCCI, J., not participating.

PRAGER, C.J., dissenting: I respectfully dissent as to Syllabus ¶ 7 and the corresponding portions of the majority opinion. I cannot accept the principle that the Kansas Adult Authority (KAA) has an absolute immunity from liability under the Kansas Tort Claims Act in placing a prisoner on conditional release without imposing conditions to protect the public, where the KAA has acted in bad faith, or with a reckless and callous disregard for the safety of the public.

The majority properly holds that the trial court erred in entering summary judgment based upon the insufficiency of the evidentiary facts at a time when the facts had not been determined by discovery or otherwise. In this case, the KAA filed a motion to dismiss the plaintiffs' action. The trial court notified counsel that it intended to rule on defendant's motion to dismiss as a motion for summary judgment. Thereafter, the plaintiffs filed notices to take the depositions of individuals whose testimony the plaintiffs believed was necessary for the court to rule

on the motion for summary judgment. The trial judge then changed his mind and ruled that he would determine the motion filed by the KAA as a motion to dismiss and not as a motion for summary judgment. In reliance upon the court's ruling, the plaintiffs withdrew their motion for additional discovery. In determining plaintiffs' right to recover against the KAA under state law, the trial court held that the KAA owed a duty to the plaintiffs and that a fact issue existed as to whether the KAA had breached its duty by knowingly and recklessly releasing a dangerous individual into society without appropriate safeguards. The court then changed its prior ruling and treated the KAA motion to dismiss as a motion for summary judgment and sustained the motion on that basis. In my judgment, this ruling clearly violated the established rules pertaining to motions for summary judgment which are thoroughly summarized in the majority opinion.

The majority opinion in this case correctly holds that the trial court erred in entering summary judgment in favor of the KAA based upon the insufficiency of the facts and the evidence at a time when the facts had not been determined by discovery or otherwise.

However, instead of reversing the case to provide the plaintiffs an opportunity to develop the facts, the majority then proceeds to hold that the KAA is immune from liability as a matter of law under the Kansas Tort Claims Act (K.S.A. 75-6104[d]). In arriving at that conclusion, the majority holds, in effect, that no matter what the factual circumstances and no matter that the KAA acted in bad faith with a reckless disregard or complete indifference to the rights of the public, the KAA can never be held liable for its actions. It is from this conclusion that I respectfully dissent, because in my opinion it is contrary to the Kansas cases and basic justice.

The petition filed by the plaintiffs against the Kansas Adult Authority specifically states as follows:

"49. In so releasing Bradley R. Boan, the defendant Kansas Adult Authority specifically failed, refused to fulfill or inadequately fulfilled their individual, official and other duties, as previously set forth herein, and each of them, in allowing, refusing or failing to prevent, intervene or protect against, the commission of aforesaid violent acts or omissions, *acted in bad faith, with reckless*

*and callous disregard for the rights of others, were grossly and wantonly negligent and exhibited intentional and deliberate indifference to the foreseeable violent and dangerous propensities posed by Bradley R. Boan and to the rights of the above-named plaintiffs, and each of them."* (Emphasis supplied.)

It is clear from these allegations that the plaintiffs' claims were based in part upon the fact that the Kansas Adult Authority acted in bad faith and recklessly in a manner constituting more than simple negligence.

In *Carpenter v. Johnson,* 231 Kan. 783, 649 P.2d 400 (1982), this court held that whether an act of a governmental agency is discretionary depends upon the totality of the circumstances. At one point in the majority opinion in this case, it is stated that the Kansas cases do not agree that the discretionary function exception grants absolute immunity, citing *Hopkins v. State,* 237 Kan. 601, 611, 702 P.2d 311 (1985), where it is clearly stated that neither the courts nor the legislature in passing the Kansas Tort Claims Act extended the mantle of immunity beyond the boundaries of protection previously recognized under the common law, and that under the common law, personal liability was imposed on officers who maliciously or wantonly injured a person or his property even though the officers were engaged in a governmental function.

The court in the majority opinion cites *Payton v. United States,* 679 F.2d 475 (5th Cir. 1982). In *Payton,* it was held that where the United States Board of Parole follows the required steps of the decision-making process and its own regulations and determines that a prisoner should be released on parole after evaluating the prisoner's records, this would be the exercise of discretionary function. I have no quarrel with this holding but would point out that in *Payton,* 679 F.2d at 481, the court's majority opinion then states as follows:

"In holding that the actual decision to grant or deny parole is within the complete discretion of the parole board, *we do not hold that the board has the discretionary power to ignore the required steps of the decision-making process."* (Emphasis supplied.)

I have no quarrel with the proposition that the Kansas Adult Authority is exempt from liability under the discretionary function exception to the Kansas Tort Claims Act (K.S.A. 75-6104[d]) where the authority follows the prescribed statutory procedures

and its own regulations in considering the background of a particular prisoner and then, in good faith, determines from the prisoner's record whether or not conditions should be required to control the prisoner during his conditional release and what those conditions should be. ·

The problem that I have in this case is that it is entirely possible that the evidence developed by the plaintiffs in their discovery may show that the members of the Kansas Adult Authority did not follow its proscribed regulations and adopted a blanket policy to release a prisoner on conditional release *in every case without any concern whatsoever for the safety of the public.*

Before the nonliability of the members of the KAA in this case can be determined, it is my opinion that the trial court should have reviewed the rules, regulations, and guidelines established by the KAA and then considered the nature and extent of the decision-making process actually utilized by the KAA in releasing Bradley R. Boan.

Before paroling a prisoner, the Kansas Adult Authority is specifically required to "consider all pertinent information regarding each inmate, including but not limited to the circumstances of the offense of the inmate; the presentence report; the previous social history and criminal record of the inmate; the conduct, employment, and attitude of the inmate in prison; and the reports of such physical and mental examinations as have been made." K.S.A. 1986 Supp. 22-3717(g). The same considerations which govern the decision whether to parole or discharge a prisoner also should govern the conditions to be attached to the release. K.S.A. 1986 Supp. 22-3718 requires that an inmate eligible for conditional release shall be subject to such written rules and conditions as the authority may impose. The Kansas Adult Authority regulations state that conditional releasees may be placed, "under mandatory in-state parole supervision" for 90 to 120 days or longer and they may be subject to the same treatment and conditions as all other parolees while on parole. K.A.R. 45-10-1.

In my judgment, these rules and regulations require the Kansas Adult Authority to consider the welfare of society when determining whether to impose conditions on releasees. In

*Hopkins v. State*, 237 Kan. 601, 702 P.2d 311 (1985), it is stated that discretion implies the exercise of discriminating judgment within the bounds of reason. Whether the Kansas Adult Authority breached a nondiscretionary duty by exercising its discretion in bad faith and in a reckless manner cannot be determined without a full and complete analysis of the factual circumstances, which have not been developed in this case.

In my judgment, this case should be reversed and remanded to the trial court with directions to afford the parties an opportunity to develop the facts, so that both the trial court and an appellate court can determine whether or not the Kansas Adult Authority is liable in failing to carry out its obligation to impose conditions on a conditional release in order to protect the public.

HERD, J., joins the foregoing dissenting opinion.