No. 47,221

James David Monroe and Chris Appel, *Appellants*, v. Johnny Darr, Sheriff of Sedgwick County, Kansas, and Ohio Casualty Insurance Company of Hamilton, Ohio, *Appellees.*

(520 P. 2d 1197)

Opinion filed April 6, 1974.

*Jim Lawing,* of Wichita, argued the cause and was on the brief for the appellants.

*H. E. Jones,* of Hershberger, Patterson and Jones, of Wichita, argued the cause, and *Stephan Jones* of the same firm and *H. W. Fanning,* of Kahrs, Nelson, Fanning, Hite and Kellogg, of Wichita, were with him on the brief for the appellees.

The opinion of the court was delivered by

Harman, C.: This is an action against a sheriff and his surety

for damages for invasion of privacy and assault committed by the sheriff's deputies. The trial court sustained defendants' motions to dismiss for failure of the petition to state a claim upon which relief can be granted. Plaintiffs have appealed from that order.

After alleging that defendant Johnny Darr is the sheriff of Sedgwick county, Kansas, and defendant Ohio Casualty Insurance Company is a surety company doing business in Kansas, plaintiffs' petition continued:

"III

"As Sheriff of Sedgwick County, the defendant Darr is responsible for all acts of his deputies which are performed as peace officer.

"IV

"Plaintiff Monroe is a citizen who works the late evening shift and is unable to get to bed at his home, Apartment 601, Royal Regency Apartments, 4244 South Hydraulic, Wichita, Sedgwick County, Kansas, until approximately 2:00 a. m.

"V

"Plaintiff Appel is a resident of Denver, Colorado, who was a guest of Mr. and Mrs. Monroe on the occasion in question.

"VI

"At approximately 10:00 a. m., Thursday, February 8, 1973, the plaintiff Monroe was awakened by a noise in his apartment, where he, Mr. Appel, and Monroe's two children were sleeping, and the first thing he heard was the voice of a sheriff's deputy ordering him to slowly remove his hands from under the cover. The person speaking was holding a shotgun, and it was pointed directly at Mr. Monroe. Other personnel of the Sheriff's Office, including an unknown sergeant, were also in the Monroe apartment, and the sergeant was pointing his handgun at Mr. Appel. Although the officers were uniformed, none of them stated their names or any reasons for their action before instituting a search of the premises, all of which was conducted while plaintiffs were looking down the less advantageous ends of gun barrels. There was no search warrant authorizing the deputies to enter the Monroe apartment or to search the premises.

"VII

"After several minutes of being frightened by the deputies, plaintiffs were told that the wrong apartment had been entered, and the deputies left in haste with no further explanation or apology.

"VIII

"This type of official misconduct has occurred on prior occasions since the defendant became sheriff, and it endangers the peace of mind of every private citizen whose home might be entered at gun point by officers who have made an insufficient preliminary investigation before using unreasonable force against innocent victims of police incompetence.

"IX

"Since the assault and the invasion of their privacy, both plaintiffs, in varying degrees, have lost sleep, become apprehensive, have generally lost their peace of mind and suffered undue mental anguish as a result of the events in question. They have further become distressed over the defendant's unwilling-ness to take appropriate corrective measures to remedy the situation and to give the public protection from further incidents of this type.

. . . . . . . . . . . . . .

"XI

"The defendant Ohio Casualty Insurance Company of Hamilton, Ohio, is the surety on the bond of the defendant Darr, and as such, is liable under K. S. A. 19-802 to the extent of the Sheriffs' liability to the plaintiffs."

In making its rulings the trial court had before it only plaintiffs' petition and the motions to dismiss. The ground for dismissal stated in the motions was simply that plaintiffs had not stated facts suffi-cient to sustain a cause of action against defendant Darr in his capacity as sheriff. The journal entry of judgment does not reveal the legal principles controlling the trial court's decision nor does the record on appeal otherwise disclose its rationale. The parties state no record was made of the trial judge's oral announcement of the ruling and they do not agree as to just what was previously argued by counsel—factors which bear on one of defendants' con-tentions for affirmance of the judgment.

We summarize the parties' present contentions. Plaintiff-appel-lants rely wholly upon statutory law making a sheriff responsible for the official acts of his deputies and his sureties liable on his official bond for the deputies' misconduct.

Defendant-appellees respond that in the trial court appellants relied solely on the doctrine of *respondeat superior* for recovery; a sheriff is not liable for a deputy's misconduct on that theory; having relied upon that doctrine in the trial court appellants may not change theories upon appeal; further the petition shows the deputies were not performing official acts at the time of their alleged mis-conduct. There is no contention the petition fails to allege tortious conduct on the part of the deputies.

Appellees correctly assert that a sheriff is not liable for the official acts of his deputy upon the doctrine of *respondeat superior* (*Duran v. Mission Mortuary*, 174 Kan. 565, 258 P. 2d 241; *Libby v. Schmidt*, 179 Kan. 683, 298 P. 2d 298). It must be borne in mind, however, this court in stating the rule was referring to the common law doctrine of *respondeat superior*—not a liability prescribed by statute

albeit that liability is of virtually the same import.

In *Libby* it was said:

"In this state the liability of a sheriff for the official acts of his deputy is not based upon the doctrine of *respondeat superior* but on the fact that by statute the deputy is his representative for whose acts he is liable as if they had been done by himself." (p. 685.)

The statute in question is K. S. A. 19-805, which provides:

"Each sheriff may appoint such and so many deputies as he may think proper, for whose official acts and those of his undersheriffs he shall be responsible, and may revoke such appointments at his pleasure; and persons may also be deputed by such sheriff or undersheriff in writing, to do particular acts; and the sheriff and his sureties shall be responsible, on his official bond, for the default or misconduct of his undersheriff and deputies."

K. S. A. 19-802 prescribes the conditions of the official bond required to be filed by a sheriff prior to assuming his office—essentially faithful performance of duties. We have many cases under these 1868 enactments holding that sheriffs and their bondsmen are responsible for acts of their deputies performed or committed in discharging their official duties (5 Hatcher's Kansas Digest, rev. ed., Sheriffs, § 17; 8A West's Kansas Digest, Sheriffs & Constables, § 100). Typical for present purposes is *Pfannestiel v. Doerfler*, 152 Kan. 479, 105 P. 2d 886. There a petition alleged that deputy sheriffs in making an arrest under a warrant used excessive force by discharging a tear gas gun into plaintiff's eyes at close range and thereafter failed to provide needed medical attention. The petition was held to state a cause of action under 19-805 as interpreted by prior case law.

As indicated the record here does not reveal the parties' contentions at trial level nor the reason given for the ruling there made. This, however, is of little or no moment, nor is the fact that the statute, 19-805, was not pleaded, despite appellees' contentions to the contrary. Under our former code of civil procedure it was not necessary to plead a statute. The rule was that where a statute provided a cause of action it was not necessary to plead the statute where the facts alleged were sufficient to bring the case within it (*Patrick v. Haskell County*, 105 Kan. 153, 181 Pac. 611). More broadly, we have held that a petition which alleged a cause of action upon any theory was sufficient to withstand a demurrer lodged against it (*Beggerly v. Walker*, 194 Kan. 61, 397 P. 2d 395). With the advent of present notice-type pleading more illiberal construction should not be the order of the day and the foregoing

rules should still prevail. Our proviso for a motion to dismiss an action for failure of the petition to state a claim upon which relief can be granted (K. S. A. 1973 Supp. 60-212 [b] [6]) is patterned after Rule 12 of the federal procedural code. In 5 Wright and Miller, Federal Practice and Procedure, § 1357 this judicial tenet is expressed:

"The complaint should not be dismissed merely because plaintiff's allegations do not support the legal theory he intends to proceed on, since the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." (pp. 601-602.)

The federal view appears sound in principle because all that is required of a petition is that it contain a short and plain statement of the claim showing the pleader is entitled to relief (K. S. A. 60-208 [a]) and, accordingly, we adopt that view.

We turn to consideration of appellants' petition. Appellees urge it is fatally defective because it reveals the deputies were performing without benefit of an arrest or search warrant and hence their actions were outside the scope of their authority, with the result they were not performing official acts at the time of their alleged misconduct. They assert there was no violation of an official duty and point to the following language found in *Libby:*

"In *Hitsman v. Kennedy,* 138 Kan. 564, 27 P. 2d 218, this court adhered to the rule that liability upon an official bond arises only with reference to acts of the officer which pertain to some function or duty which the law imposes upon his office, and that a sheriff and his bondsman are not liable for an unofficial act of a deputy where the act is one which the law does not require him officially to perform." (p. 686.)

It is correct that 19-805 does not impose liability on a sheriff and his bondsman for every act of misconduct on the part of his deputy. Liability attaches only when the misconduct occurs in the performance of an official act by the deputy. In *Libby* an official act was defined as an act or duty imposed on an officer by law, that is, an act which the law requires him officially to perform.

Does the petition here sufficiently allege performance of official duty by the offending deputies?

First it should be noted that the deputy sheriffs were alleged to be in uniform (K. S. A. 1973 Supp. 19-822, with exceptions which do not presently appear to be material, provides that sheriffs and their deputies, when on duty, shall be dressed in a distinctive uniform and display a badge of office). Evidently one of them bore indicia of a sergeant. They were armed. It appears to be a

fairly drawn inference that they were making an arrest and conducting a search—work clearly within the realm of the duties of deputy sheriffs. Although not determinative (and surplus verbiage is included) the petition does characterize the deputies' action as "official misconduct" and it mentions K. S. A. 19-802, the statute prescribing the conditions for the sheriff's official bond.

It is true the petition makes no mention of an arrest warrant. However, Kansas law enforcement officers have a right, moreover a duty, to arrest and also to conduct a search without a warrant under particular circumstances, the extent of which authority is of no present concern.

Long ago this court recognized the concept of acts done under color of office in determining what constituted official acts of a law enforcement officer. In *Hoye v. Raymond*, 25 Kan. 665, the action was one for damages against a constable and the sureties on his official bond for wrongs committed by the constable's deputy. The deputy allegedly levied execution upon property of the plaintiff rather than upon that of the person named in the writ. In holding the petition good as against demurrer, this court stated:

"The deputy is the agent of the constable for the service of process and whatever the deputy does under color of his office, the constable in legal contemplation also does, and is responsible therefor." (pp. 666-667.)

In *Hitsman v. Kennedy*, 138 Kan. 564, 27 P. 2d 218, a sheriff and his undersheriff were invited by the sheriff of another county to attend a raid upon an illicit still located within the jurisdiction of the latter. Suit was brought against the visiting sheriff and his official bondsman for wrongful acts of his undersheriff in the course of the expedition. This court held the out-of-county officers had no official duty to perform in the raid and no more official status than neighbors near the raided property would have had had they joined the party. This rule was stated:

"The liability on the sheriff's official bond does not extend beyond acts done by virtue of his office or color of office, nor for acts done in his private and unofficial capacity." (Syl.)

Consideration of acts done under color of office as constituting official acts received more elaborate treatment under statutes similar to our own in *Miles v. Wright*, 22 Ariz. 73, 194 Pac. 88. There a deputy sheriff boarded a train and made a warrantless arrest of the plaintiff upon a charge of larceny. Suit was brought against the sheriff and his surety. Defendants demurred to plaintiff's petition

on the ground it did not state a cause of action in that it failed to allege the deputy was in the performance of an official act or that his acts were done in obedience to any duty imposed by law, and further revealed the deputy had no warrant upon which to make an arrest. After stating Arizona law similar to our own which authorized a peace officer to arrest without a warrant under certain circumstances, the court had this to say respecting official acts:

"Our examination of the cases, however, convinces us that the correct rule is stated in *Turner v. Sisson*, 137 Mass. 191, wherein the court defines an official act as follows:

" 'It means any act done by the officer in his official capacity under color and by virtue of his office.'

"The court, in the case of *Hall v. Tierney*, 89 Minn. 407, 95 N. W. 219, approves the Massachusetts definition of an 'official act' and adds:

" 'The distinction originally made between acts done by virtue of an office and acts done by color of office has been entirely disregarded by leading authorities within the past few years [citing authorities] . . . Under G. S. 1894, § 7120, the right is given the sheriff to arrest a person without a warrant, and it has been held in this state that, whether a sheriff arrests under a warrant or under the authority thus given by statute (that is, without a warrant), he acts in his official capacity. *Warner v. Grace*, 14 Minn. 487. As a peace officer, the sheriff arrested and incarcerated the plaintiff in jail. He made this arrest without a warrant, and in so doing acted officially, and, it is alleged without authority of law.'

"Quoting and adopting the definition of an 'official act' in the Turner-Sisson case, the Supreme Court of Illinois made this comment:

" 'By an official act is not meant a lawful act of the officer in the service of process; if so, the sureties would never be responsible. It means any act done by the officer in his official capacity, under color and by virtue of his office.' *Greenberg v. People*, 225 Ill. 174, 8 L. R. A. (N. S.) 1223, 116 Am. St. Rep. 127, 80 N. E. 100.

. . . . . . . . . . . . . .

"In a very recent case, *Reichman v. Harris*, 252 Fed. 371, loc. cit. 384, 164 C. C. A. 295, 308, this court said:

" 'Where the act of the deputy is an official act and causes an injury, the sheriff is answerable; and this is true where the act is done in execution of the deputy's office, even though he may be mistaken as to the lawfulness of the act, for otherwise no action could ever be maintained against a sheriff for the misconduct of his deputy [citing cases]. Although the sureties of the sheriff are not parties here, yet the controlling principles laid down in these cases and by Judge COOLEY are necessarily involved and applied in decisions granting recovery against a sheriff or other like officer and his sureties for misconduct of the officer or his deputies [citing authorities].'

"Also in *Meek v. Tilghman et al.*, 55 Okl. 208, 154 Pac. 1190, the court said:

" 'In *Brown v. Weaver*, 76 Miss. 7, 71 Am. St. Rep. 512, 42 L. R. A. 423, 23 South. 388, in a well-considered opinion the court quotes from Murfree on Sheriffs as follows:

" ' "If the act from which the injury resulted was an official act, the authorities are clear that the sheriff is answerable; if it was not an official, but a personal, act, it is equally clear that he is not answerable. But an official act does not mean what the deputy might lawfully do in the execution of his office; if so, no action would ever lie against the sheriff for the misconduct of his deputy. It means, therefore, whatever is done under color or by virtue of his office." '

"We think the more modern view taken by most of the courts is well expressed, by Mr. Justice CHADWICK in *Greenius v. American Surety Co.*, 92 Wash. 401, L. R. A. 1917F, 1134, 159 Pac. 384, as follows:

" 'Much mental energy has been expended in drawing distinctions between acts of public officers done *colore officii* and acts done *virtute officii*, and we shall not undertake to assemble definitions. Our understanding is that, when an officer acts in the performance of his duty and, so acting, acts to the hurt or annoyance of a third party or an innocent party, he is nevertheless acting in virtue of his office. That is to say, if his office gives him authority to act, he is acting in virtue of his office, although, in the performance of a specific duty, he improperly exercises his authority. For instance, if an officer have a warrant for A. and, without reasonable ground for believing him to be the guilty person, takes B., he is still acting in virtue of his office. If it were not so, he would never be liable upon his bond. Nor would his surety ever be liable except for his lawful acts, which is *reductio ad absurdum*, for it follows that there could be no liability if there had been no breach of duty.' " (pp. 83-85.)

In the Kansas cases cited, *Hoye* and *Hitsman*, this court appears to have had in mind the definition of an official act as elaborated by the Arizona court and the authorities cited therein. Accordingly, it must be held that an official act includes any act done by an officer in his official capacity under color of his office.

Since it may be fairly inferred from appellants' petition that the deputies were making an arrest and search under color of authority, it follows the sheriff and his surety would be answerable for wrongs committed by them and the trial court erred in dismissing the action (at this stage we are not concerned with whether their conduct was actually tortious). On the other hand, if the deputies at the time in question were on a private errand of their own, completely apart from the duties of a peace officer, that fact can be pleaded by appellees as a defense and shown at trial.

The judgment is reversed and the cause remanded with directions to set aside the order of dismissal and proceed with trial of the action.

APPROVED BY THE COURT.