(805 P.2d 1244)

No. 65,019

WALLACE R. NOEL, LARRY D. NOEL, MICHAEL L. NOEL, and CATHY R. NOEL, *Plaintiffs/Appellants/Cross-Appellees*, v. PIZZA HUT, INC., and PEPSICO, INC., *Defendants*, and PIZZA MANAGEMENT, INC., and ARTURO G. TORRES, *Defendants/Appellees/Cross-Appellants*.

Petition for review denied April 23, 1991.

226

Opinion filed February 15, 1991.

Robert Martin and J. Michael Riehn, of Martin, Pringle, Oliver, Wallace & Swartz, of Wichita, for the appellants.

Ron D. Beal, of Klenda, Mitchell, Austerman & Zuercher, of Wichita, for the appellees.

Before LEWIS, P.J., PIERRON, J., and RICHARD B. WALKER, District Judge, assigned.

LEWIS, J.: This is an action for the breach of a third-party beneficiary agreement. The trial court sustained a motion to dismiss on the grounds that the petition failed to state a claim upon which relief could be granted. The trial court also dismissed the action as to the defendant Arturo G. Torres on jurisdictional grounds. The plaintiffs (Wallace Noel and his children Larry, Michael, and Cathy Noel) appeal both rulings. The defendants Pizza Management, Inc., (PMI) and Torres cross-appeal the refusal of the court to award attorney fees, and PMI cross-appeals the court's decision that PMI is subject to Kansas jurisdiction.

After careful review, we reverse those rulings of the trial court adverse to the plaintiffs and remand.

There are basically three issues on this appeal, and we will approach and deal with each issue separately.

DID THE PETITION OF PLAINTIFFS STATE A CLAIM ON WHICH RELIEF COULD BE GRANTED?

The question before this court is whether the second amended petition states a claim for relief against PMI and Torres. In examining the petition, we note that there are three claims for relief set forth. The third claim seeks relief only from the defendant PepsiCo, Inc., (PepsiCo) which is no longer a party to this litigation. As a result, only the first two claims for relief remain relevant and will be considered in this opinion. The facts stated in the opinion are taken from allegations of the petition.

The petition will be summarized where possible while the key paragraphs will be restated verbatim.

The petition alleges that all of the plaintiffs (Noels) are owners of common stock in PMI. Wallace Noel owns some 386,448 shares of common stock in PMI, while his children each own 2,500 shares in that corporation.

PMI is a Texas corporation, which has its principal office and place of business in San Antonio, Texas. The defendant Torres is a resident of Texas and the president, CEO, director, and majority stockholder of PMI. Both PMI and Torres are alleged to be transacting business in Kansas and to have subjected themselves to the jurisdiction of the Kansas courts.

Prior to February 1, 1977, Wallace Noel was the owner and operator of a number of Pizza Hut franchise restaurants and related franchise territories and locations. In the fall of 1976, Noel was approached by PMI with a proposal wherein he would sell his restaurants, locations, and franchise rights to PMI in exchange for PMI stock. In addition:

"[i]t was represented by PMI and Torres that the company and the shareholders of PMI held special contract rights granted by Pizza Hut which would permit PMI and its shareholders to register, make a public offering and sale of stock without any restrictions by Pizza Hut, notwithstanding any terms or limitations of the Pizza Hut franchise agreements."

The agreement alleges specific breaches of contract, as are hereinafter set forth, and alleges that, by reason of those breaches of contract, the plaintiffs had been damaged in the amount of $5 to $11 million.

The petition alleges the following:

"11. Plaintiff refused to agree to transfer his Pizza Hut restaurants and franchise rights to PMI for several months until the representations as to the registration and public offering were confirmed. In 1976, Noel was provided with a copy of a signed contract between Pizza Hut, PMI and Torres ('the 1976 agreement') which contained the following provision:
"'PMI may issue and/or sell or otherwise lawfully issue additional shares of its stock from time to time and the shareholders of PMI other than Torres may sell, assign or transfer their PMI shares without any restrictions imposed by Pizza Hut, and PMI may register its shares under the provisions of the Texas Securities Act, subject to the restriction that Torres agrees that at all times he will take any and all actions necessary to cause him to remain the record and beneficial owner of at least fifty-one percent (51%) of the issued and outstanding

shares of stock of PMI; provided, however, that in the event that the stock of PMI shall be sold in an underwritten public offering registered under the Securities Act of 1933, as amended, the foregoing restriction on ownership by Torres shall no longer apply, so long as Pizza Hut is given thirty (30) days prior written notice of such offering and approves the Prospectus and Registration Statement, and all amendments thereto, insofar as the same refers to Pizza Hut, its relationship to PMI and Pizza Hut's registered trademarks and tradenames, which approval will not be unreasonably withheld. PMI and Torres agree that such stock will not be offered by use of the name "Pizza Hut" except to reference the fact that PMI is a franchisee of Pizza Hut.'

"Upon being satisfied that the written agreement, in the terms set out above, had been executed by the requisite parties (defendants Pizza Hut, PMI and Torres), Noel agreed to transfer his Pizza Hut franchise restaurants and the related franchise rights to PMI in exchange for shares of common stock on February 1, 1977.

.  .  .  .

"13. In 1981, Pizza Hut prepared a new form of franchise agreement titled Superseding Franchise Agreement, which all Pizza Hut franchisees were requested to sign. PMI executed the Superseding Franchise Agreement under date of July 20, 1981, but concurrently, there was prepared and executed a separate written agreement of even date titled Blanket Amendment To Superseding Franchise Agreement ('Blanket Amendment'), which was executed by the parties to ratify, confirm and extend the rights of PMI and its shareholders to register, make a public offering and sell shares of stock in PMI without any restriction or interference from the franchisor, Pizza Hut, as provided in the 1976 agreement. These rights were expressed and confirmed in a paragraph identical to that set out in paragraph 11 of this Second Amended Petition.

"14. Plaintiffs are and were intended to be third-party beneficiaries of the 1976 agreement and the 1981 Blanket Amendment, insofar as they provided for and confirmed the unrestricted right of PMI and its shareholders to register and sell shares of PMI through an underwriting and public offering. Plaintiffs relied upon the agreements and were entitled to rely upon them and would not have entered into the 1977 transaction with PMI and would not have become shareholders in PMI absent the signed 1976 agreement.

"15. PMI and Torres are parties to the written agreements out of which plaintiffs' claims for relief arise and are therefore proper parties to this action.

"16. At all times material, plaintiffs were not officers, directors, or employees of PMI and had no control over the business or affairs of PMI. Plaintiffs believed that the 1976 agreement and the 1981 Blanket Amendment were valid and enforceable contracts, made for their benefit as shareholders in PMI, and that those contracts would be honored and performed according to their terms.

"17. In the spring of 1986, PMI developed plans for a registration, underwriting and public offering of PMI stock and pursuant thereto negotiated a commitment from Shearson Lehman Brothers to serve as managing underwriter for the public offering of PMI stock. A prospectus and a registration statement were prepared and proper written notice was given to Pizza Hut of the proposed public offering.

"18. Defendants Torres, PMI and Pizza Hut, and each of them, as parties to the 1976 and 1981 Agreements, and defendants PepsiCo, as the parent corporation of PHI, owed plaintiffs a duty not to terminate, impair or modify the third-party beneficiary contracts by subsequent transactions or agreements. Plaintiffs materially changed their position in reliance upon the third-party beneficiary contract by transferring franchise locations and related rights to PMI in exchange for shares of common stock in PMI in reliance upon the the [sic] written agreement that PMI had the right to make a public offering and 'go public' through a registration of its stock without restriction or interference from Pizza Hut. Plaintiffs also changed their position in reliance upon the contractual provision which vests in the shareholders of PMI the unrestricted right to transfer their shares of stock in PMI.

"19. Without the knowledge or consent of plaintiffs, defendants PMI, Torres and Pizza Hut entered into subsequent agreements and transactions, including but not limited to an exchange of franchise locations which some of the defendants now assert had the effect of terminating, impairing, modifying, or restricting the 1976 and 1981 agreements and the rights of plaintiffs thereunder. Defendant PepsiCo approved or consented to the subsequent agreements and transactions.

"20. The acts and conduct of defendants PMI, Torres, Pizza Hut, and PepsiCo, as alleged above, constitutes a breach of the third-party beneficiary obligations of the contracts and is an abridgement of plaintiffs' rights thereunder such that defendants are jointly and severally liable to plaintiffs for breach of the third-party beneficiary contracts.

"21. At all times since the breach of contract by defendants, plaintiffs' shares in PMI have had a realizable value of less than $2 per share. Plaintiffs are collectively the owners of 393,948 shares of stock in PMI and have therefore been damaged by the breach of contract, as alleged, in an amount between $5,500,000 and $11,000,000 in the loss of a market and market value for their shares of stock and have suffered substantial consequential loss and damage. The full extent of plaintiffs' loss and damage will be established by the proofs at trial."

The second claim for relief in the plaintiffs' petition incorporates all of the allegations of the first claim for relief and further alleges:

"22. Defendants knew or should have known, at the time of the transactions and agreements referred to in paragraphs 19 and 20 of this Petition, that it was the intention of Noel and the parties to the 1976 and the 1981 agreements that PMI and its shareholders should have and enjoy the un-

restricted right to make a public offering, accomplish a registration of stock in PMI, and sell their shares in the public market.

"23. The transactions and agreements executed by and between Pizza Hut, PMI, and Torres which some defendants claim has the effect of terminating, modifying, impairing or restricting the 1976 and 1981 agreements and plaintiffs' rights thereunder, were executed by the respective parties without resolving or providing for what effect these transactions and agreements might have on the right of PMI and its shareholders to make a public offering, and thereby breached the duty owed to plaintiffs under the third-party beneficiary obligations of the 1976 and 1981 agreements.

"24. By their acts and silence, defendants led plaintiffs to believe that these later transactions and agreements would not adversely affect the right of PMI and its shareholders to make a public offering and sell shares of stock of PMI in the public market.

"25. Defendants, and each of them should be estopped from claiming, as against plaintiffs, that the unrestricted rights of PMI and its shareholders, as set forth in the 1976 and 1981 agreements, are modified, discharged, amended or restricted by any subsequent transactions or agreements entered into by and between defendants PMI, Torres and Pizza Hut."

We note that the defendants Pizza Hut and PepsiCo are no longer parties to the action and the allegations against those defendants may be disregarded.

The question before this court is whether the allegations of the petition state a claim against the defendants PMI and Torres on which relief can be granted.

In approaching this issue, we note that, at the time the motion to dismiss was granted, there had been no discovery. We further note that there is nothing to indicate that factual matters outside the pleadings were presented to or considered by the court other than certain comments that were made by counsel. Under these circumstances, our Supreme Court has set forth the scope of review to be utilized. In *Bruggeman v. Schimke*, 239 Kan. 245, 247-48, 718 P.2d 635 (1986), the court stated:

"Our scope of review, where the trial court has sustained a motion to dismiss, is concisely defined in *Knight v. Neodesha Police Dept.*, 5 Kan. App. 2d 472, 620 P.2d 837 (1980):

" 'When a motion to dismiss under K.S.A. 60-212(*b*)(6) raises an issue concerning the legal sufficiency of a claim, the question must be decided from the well-pleaded facts of plaintiff's petition. The motion in such case may be treated as the modern equivalent of a demurrer.' Syl. ¶ 1.

" 'Disputed issues of fact cannot be resolved or determined on a motion to dismiss for failure of the petition to state a claim upon

which relief can be granted. The question for determination is whether in the light most favorable to plaintiff, and with every doubt resolved in plaintiff's favor, the petition states any valid claim for relief. Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim.' Syl. ¶ 2.

" 'In considering a motion to dismiss for failure of the petition to state a claim for relief, a court must accept the plaintiff's description of that which occurred, along with any inferences reasonably to be drawn therefrom. However, this does not mean the court is required to accept conclusory allegations on the legal effects of events the plaintiff has set out if these allegations do not reasonably follow from the description of what happened, or if these allegations are contradicted by the description itself.' Syl. ¶ 3.

"See also *Weil & Associates v. Urban Renewal Agency*, 206 Kan. 405, 413-14, 479 P.2d 875 (1971).

"The court also stated in *Knight*:

" 'It is not necessary to spell out a legal theory for relief so long as an opponent is apprised of the facts that entitle the plaintiff to relief. *Febert v. Upland Mutual Ins. Co.*, 222 Kan. 197, 199, 563 P.2d 467 (1977). The court is under a duty to examine the petition to determine whether its allegations state a claim for relief on any possible theory. *Monroe v. Darr*, 214 Kan. 426, Syl. ¶ 3, 520 P.2d 1197 (1974).' 5 Kan. App. 2d at 475."

In essence, we are required to assume that the facts alleged by the plaintiffs are true, and we are required to make any reasonable inferences to be drawn from those facts. In addition, it is our duty to determine whether those pleaded facts and inferences state a claim, not only on the theory which may be espoused by the plaintiffs, but on *any possible theory* we can divine.

There are sound reasons for exercising judicial skepticism towards dismissal of a petition for failure to state a claim prior to the completion of discovery. We long ago abandoned the theory of fact pleading in favor of our present 'notice' type pleading. Indeed, as our Supreme Court stated in *Monroe v. Darr*, 214 Kan. 426, 429-30, 520 P.2d 1197 (1974):

"More broadly, we have held that a petition which alleged a cause of action upon any theory was sufficient to withstand a demurrer lodged against it [citation omitted]. With the advent of present notice-type pleading more illiberal construction should not be the order of the day and the foregoing rules should still prevail."

Indeed, under our modern procedure, the petition does not intend and is not necessarily intended to govern the entire course of the lawsuit. The ultimate determination as to the legal issues and theories on which the action will be determined is the pretrial order. The declining importance of the allegations of a petition is set forth in *Oller v. Kincheloe's, Inc.*, 235 Kan. 440, 446-49, 681 P.2d 630 (1984):

"The following general principles have been established down through the years:

"(1) The need for technical pleading has vanished. We now require only a bare-bones pleading which outlines the nature of the claim. Since discovery in its broadest scope is available under the code of civil procedure, there is no need for technical pleadings. [Citations omitted.]

"(2) A petition which alleges a claim for relief upon any theory is sufficient to withstand a motion to dismiss lodged against it. In considering such a motion, dismissal should not be ordered merely because plaintiff's allegations do not support the legal theory upon which he intends to proceed, since the court is under a duty to examine the petition to determine whether its allegations state a claim for relief on any possible theory. [Citation omitted.]

"(3) It is not necessary to spell out a legal theory of relief so long as an opponent is apprised of the facts that entitle plaintiff to relief. [Citations omitted.]

"(4) Under the Kansas Code of Civil Procedure, there is no requirement that pleadings state facts sufficient to constitute a cause of action. [Citation omitted.]

"(5) The spirit of our present rules of civil procedure permits a pleader to shift the theory of his case as the facts develop so long as he has fairly informed his opponent of the transaction or the aggregate of the operative facts involved in the litigation. [Citation omitted.]

"(6) Under K.S.A. 60-208, the pleader may allege or make contradictory or alternative statements until he finds out which theory, if any, the facts support, and is permitted to shift the theory as the facts develop. [Citation omitted.] In an action for breach of implied warranty, a party may plead and proceed upon the theories of both contract and tort until the facts have been developed and the case is ready to be submitted to the trier of the facts. One seeking to recover for breach of an implied warranty must eventually elect a definite theory before final submission to the trier of the facts. [Citation omitted.]

. . . .

"(10) The Kansas Code of Civil Procedure contemplates utilization of the rules for discovery and a pretrial conference to formulate the ultimate issues of both fact and law to be determined in the case. See K.S.A. 60-216 and Supreme Court Rule No. 140 (232 Kan. cxlviii). Under the Kansas procedure, a pretrial order made pursuant to K.S.A. 60-216 supersedes the pleadings

and controls the subsequent course of an action unless modified by the court to prevent manifest injustice. A pretrial order which specifies the issues to be tried supersedes and replaces the pleadings. [Citation omitted.]

"(11) Interrogatories under K.S.A. 60-233 may be of better service than definiteness and certainty in pleadings, as, unlike pleadings, answers to interrogatories must be made under oath and the answers may be used at trial by the interrogating party, subject to the rules of evidence. One purpose of this rule is to curtail the necessity of motions to make definite and certain. [Citation omitted.] Interrogatories that call for an opinion or contention that relates to the application of law to the facts [citation omitted] can be most helpful in narrowing and sharpening the issues, which is an important part of discovery. [Citation omitted.]

"Since Kansas adopted its code of civil procedure in 1964, the requirement that a plaintiff must plead a cause of action and a definite theory is no longer recognized in this state. As noted by Judge Wisdom in *Thompson v. Allstate Insurance Company*, 476 F.2d 746, 749 (5th Cir. 1973), 'Ancestor worship in the form of ritualistic pleadings has no more disciples. The time when the slip of a sergeant's quill pen could spell death for a plaintiff's cause of action is past. Under the Federal Rules of Civil Procedure, a complaint is not an anagramatic exercise in which the pleader must find just exactly the prescribed combination of words and phrases.'"

In our opinion, the dismissal of a petition for failure to state a claim prior to the utilization of discovery procedures is seldom warranted. The petition's principal purpose is notice, and the ultimate theory on which the modern lawsuit is tried is shaped by the facts which are unveiled through the discovery process.

Our application of these rules to the instant matter causes us to conclude that the motion to dismiss in this case should not have been granted.

In essence, the petition alleges that Wallace Noel sold his business for stock in PMI based on the assurance and promise of PMI that he could sell his stock in the open market. Noel was well aware that the basic Pizza Hut franchise agreement forbade the sale of stock in the manner he had bargained for. As a result, he refused to sell until PMI could convince him that this right was guaranteed. In order to convince Noel that Pizza Hut would comply with PMI's representations, PMI produced an agreement between itself and Pizza Hut, which made an exception to the general rule and which would permit the Noels to sell the PMI stock they would receive in the manner they desired. Noel then alleges that, after selling his business and receiving PMI stock therefor, PMI and Pizza Hut, without his knowledge or consent,

entered into a subsequent agreement which abrogated plaintiffs' right to sell the PMI stock publicly. The petition alleges or infers that PMI entered into this last agreement to gain a benefit for itself and, in so doing, sacrificed the benefits it secured to the plaintiffs under the 1976 agreement, which was relied upon by the plaintiffs. As we read the petition, it alleges that PMI and Torres were responsible for the breach of the third-party agreement in concert with Pizza Hut and PepsiCo.

The defendants argue that they had no duty which was owed to the plaintiffs under the third-party agreement. We disagree.

The trial court dismissed the petition largely because of the legal theory espoused by the plaintiffs. It is important to keep in mind that, under our modern rules, it is not necessary for the petition to allege or espouse *any* legal theory in order to state a claim. The purpose of the petition is to notify a defendant of the facts on which relief is sought. The development of these facts and the legal theory to which they may be appended is left to the discovery and pretrial procedures. While we believe the petition does state a claim for relief under a certain theory, we hasten to add that plaintiffs are not necessarily tied to that theory. As the matter develops, the precise theory may be shifted as the facts warrant.

The trial court apparently based its decision to dismiss on the theory that the promisee of a third-party beneficiary agreement may not be sued for causing its breach. In the journal entry dismissing the action, the court stated:

"3. In oral argument counsel for plaintiffs made clear that there is no claim being made against PMI and Torres for the alleged loss of a right to go public. The plaintiffs' claim is that the 1976 and 1981 agreements granting unrestricted transfer of their shares has been negated by PMI and Torres without their consent. The plaintiffs make their claim as a third party beneficiary.

. . . .

"5. The plaintiffs cite no Kansas case which gives them a cause of action against the promisee such as PMI. The plaintiffs' cause of action, if any, is against the promisor. The claims against PMI and Torres are dismissed."

It is difficult for this court to see the rationale in a conclusion that plaintiffs have not stated a claim when they contend that PMI and Torres have caused the breach of an agreement they entered into for plaintiffs' benefit. If the plaintiffs are able to

prove that such breach occurred, it appears clear that such proof would entitle plaintiffs to relief.

We would agree that there is no Kansas case which states that a third-party beneficiary of an agreement may sue the promisee of that agreement for its breach. The fact that no case exists does not mean that under all circumstances such an action is not maintainable in this state. It is almost universally recognized that a third-party beneficiary may sue for the breach of an agreement entered into for his benefit. The usual form of action is lodged against the promisor of that agreement. If, however, the promisee of the third-party agreement is responsible for the breach, jointly or alone, there is no legal theory that protects the promisee from liability for the breach.

Giving the most favorable interpretation to the petition of the plaintiffs, it alleges that, in order to obtain Noel's property, PMI either entered into or produced an agreement with Pizza Hut that satisfied the demands that Noel was making prior to selling his property to PMI. The petition then alleges that PMI, in order to gain an advantage for itself, entered into a subsequent agreement with Pizza Hut which abrogated the agreement on which Noel relied. Although PMI may technically have been a promisee, the petition alleges it used the 1976 agreement to convince plaintiffs to sell their assets to it and, after that was accomplished, it *caused* the abrogation of that agreement by seeking out and entering into a subsequent agreement with Pizza Hut. We believe that proof of these allegations would entitle plaintiffs to a judgment against PMI. It is incorrect to assume that a promisee may not be the efficient cause of the breach of a third-party beneficiary contract. It would be an injustice to conclude that a promisee could gain an advantage by entering into a third-party beneficiary contract and then cause the breach or abrogate the terms of that contract with impunity.

The right of a beneficiary to sue the promisee of a third-party contract is recognized by other jurisdictions. The underpinning of the action is the existence of a duty owed the beneficiary by the promisee, which duty is violated by the breach.

The Restatement (Second) of Contracts § 310 (1979) recognizes the right to sue a promisee:

"(1) Where an intended beneficiary has an enforceable claim against the promisee, he can obtain a judgment or judgments against either the promisee or the promisor or both based on their respective duties to him. Satisfaction in whole or in part of either of these duties, or of a judgment thereon, satisfies to that extent the other duty or judgment, subject to the promisee's right of subrogation."

In *Kraus v. Willow Park Public Golf Course*, 73 Cal. App. 3d 354, 371, 140 Cal. Rptr. 744 (1977), the California court set forth the rule as follows:

"Moreover, a third party creditor beneficiary can sue either the promisor or the promisee or may join them and obtain judgment against both. (*Dick v. Woolson* (1951) 106 Cal. App. 2d 415, 419 [235 P.2d 119]; *Eastin v. Roberts, Carpenter & Co.* (1937) 19 Cal. App. 2d 567, 571 [66 P.2d 244]; Rest., Contracts (1932) § 141; Ferson, *Contracts in Favor of Third Parties* (1955) 6 Hastings L. J. 354, 369.) Maintenance of an action by a third-party beneficiary is not precluded by the fact that a suit or claim might be brought also against the one to whom the promise was made. (*Johnson v. Holmes Tuttle Lincoln-Merc.* (1958) 160 Cal. App. 2d 290, 297 [325 P.2d 193]). Although the creditor beneficiary may enforce the original obligation against either the promisor or the promisee or against both, he may not collect more than his due; satisfaction in whole or in part of either of these duties will operate to that extent as satisfaction of the liability of the other."

Although these authorities cited may not be precisely on point factually, they do establish that a promisee may, under proper circumstances, be sued for a breach of duty owed a third party for whose benefit an agreement was created.

The plaintiffs argued before the trial court that it was a misnomer to label PMI and Torres as strictly promisees. They point out that the agreements, which Torres and PMI entered into with Pizza Hut, contained various promises and obligations by and between both parties. We suggest that proper discovery in this lawsuit will reveal the true status of PMI in the agreement.

The designation of a creditor beneficiary has been abolished in Kansas. *Noller v. General Motors Corp.*, 13 Kan. App. 2d 13, 760 P.2d 688 (1988), *aff'd in part, rev'd in part* 244 Kan. 612, 772 P.2d 271 (1989). It is helpful to employ that term in examining the petition. The plaintiffs fit the definition of a creditor beneficiary to whom a duty was owed by all parties to the third-party agreement. That being correct, it follows that they may sue either party for breach of the agreement made for their benefit.

We hold that the petition at hand states a claim upon which relief can be granted against PMI and Torres. The fact that PMI and Torres occupied the position of promisee under the agreement sued upon does not entitle them to breach that agreement and damage plaintiffs and then escape all liability for the damage they allegedly caused.

It also appears that this petition may state a claim for relief on the theory that PMI and Torres breached an implied duty of good faith and fair dealing owed to the plaintiffs. This theory is recognized in *Bonanza, Inc. v. McLean*, 242 Kan. 209, 222, 747 P.2d 792 (1987). We cannot determine if that theory will be factually supportable, but that is not at issue here and will be determined as the lawsuit unfolds. Suffice it to say, the petition infers that the third-party agreement was used to obtain an advantage to PMI and Torres and was then breached by them. The parties to the third-party agreement all owed the plaintiffs a duty of good faith and fair dealing, and the manner in which that agreement was abrogated may have violated that duty. While the petition utilizes certain allegations that are somewhat equivocal in their direction, we have no hesitancy in holding it is sufficient to state a claim for relief.

In summary, we hold that the trial court erred in granting the motion to dismiss for failure to state a claim. There is no absolute prohibition against a third-party beneficiary suing the promisee of the third-party agreement. The petition alleges sufficient facts to show that PMI and Torres owed a duty to plaintiffs under the third-party agreement and that they breached that duty. This is sufficient and is all that is required under our modern rule of pleading. On remand, plaintiffs will be responsible for proving those allegations, and only time will tell whether they can sustain that burden. We hold here only that, under our procedure, facts sufficient to state a claim have been well-pled, and plaintiffs are entitled to proceed with discovery.

DID THE TRIAL COURT ERR IN DISMISSING THE PETITION AGAINST TORRES FOR LACK OF JURISDICTION?

The trial court held that personal jurisdiction did not exist over Torres because he signed all of the contracts, except the third-party contract, as a corporate officer. The trial court further held that, with regard to the third-party contract, Torres signed as a

guarantor and, therefore, did not submit himself, a Texas resident, to jurisdiction in Kansas.

We believe the trial court erred in its conclusion.

K.S.A. 1990 Supp. 60-308(b) sets out the conditions under which Kansas courts have jurisdiction over foreign residents. The relevant provisions of that statute state:

"Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:

"(1) Transaction of any business within this state;

. . . .

"(5) entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state."

It is important to note that the contract on which plaintiffs base their cause of action is a third-party beneficiary contract entered into between Torres and PMI, who are Texas residents, and Pizza Hut, which is a Kansas resident. K.S.A. 60-308(b)(5), quoted above, clearly states that entering into an agreement with a resident of this state to be performed in whole or in part by either party in this state subjects that individual to the jurisdiction of the Kansas courts. Torres and PMI entered into a third-party contract with Pizza Hut, a resident of Kansas. The performance of that contract was to take place in whole or in part within the State of Kansas.

We also hold that the due process requirements of the Fourteenth Amendment have been satisfied. That amendment requires "certain minimum contacts" between the defendant and the state asserting jurisdiction and further provides that the maintenance of the suit must not offend traditional notions of fair play and substantial justice. *Internat. Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945). In the present case, such contacts have been met. Torres voluntarily entered into the contract with a Kansas resident, performance of which would take place in Kansas. The purpose of Torres entering into the third-party contract was to persuade Noel to sell his Pizza Hut restaurants and franchise rights to PMI. As a direct result of the third-party agreements, Torres was able to purchase the

Pizza Hut restaurants and franchise rights belonging to Noel. The required "minimum contact" was present.

The mere fact that Torres signed the 1976 agreement as a guarantor does not affect our decision. The cases indicate that, as long as minimum contacts exist and the notions of fair play are not offended, Kansas can exert jurisdiction over Torres, even though he signed as a guarantor. See *First City Bank v. Air Capitol Aircraft Sales*, 820 F.2d 1127 (10th Cir. 1987); *Marathon, Etc. v. Mountain Empire Const. Co.*, 653 F.2d 921 (5th Cir. 1981); *Intamin, Inc. v. Figley-Wright Contractors, Inc.*, 595 F. Supp. 1348 (N.D. Ill. 1984).

In *Intern. Pizza Hut, Etc. v. Supreme Pizza, Inc.*, 464 F. Supp. 65 (D. Kan. 1978), a fact pattern similar to the one before this court existed. A third-party beneficiary was suing on a contract and one of the parties to that contract was Pizza Hut, a Kansas resident. In *Supreme Pizza*, the federal district court held that K.S.A. 60-308(b)(5) clearly provided jurisdiction in Kansas in a suit by the third-party beneficiary, who was not a Kansas resident. The court stated:

"The only true question before the Court is whether the long arm statute authorizes service on one whose contract with a Kansas resident gives rise to an action by a third party beneficiary of that contract. This Court finds that it does. The literal wording of the statute applies to the facts before the Court. Defendant has entered the requisite contract and plaintiff's claim arises out of that contract. The statute authorizes service on anyone with a given relationship to the forum—one who has contracted with a Kansas resident for some performance by some party in the state. Nothing in subsection (b)(5) restricts service only to those whose contract has given rise to a claim asserted by a party to the contract. Plaintiff's third party claim arises out of the Pizza Hut contract. It falls within the literal ambit of the statutory provision.

"The Kansas courts have consistently held that the Kansas legislature intends the long arm statute to authorize personal service to the fullest extent of the due process clause. *Woodring v. Hall*, 200 Kan. 597, at 606, 438 P.2d 135, at 144 (1968); *Misco-United Supply, Inc. v. Richards of Rockford, Inc.*, 215 Kan. 849, 528 P.2d 1248 (1974). This goal can be achieved only by a broad interpretation of the long arm statute that provides for service in the widest possible set of circumstances and in as many cases as the literal wording of the statute permits. This interpretation comports with the general view that a case 'should not be dismissed for want of jurisdiction as being outside the scope of the statute, unless by no reasonable construction of the language could it be said to fall within the statute's

terms.' Casad, *Long Arm and Convenient Forum*, 20 Kan. L. Rev. 1, 45 (1971)." 464 F. Supp. at 67.

We hold that the Kansas courts clearly may exercise jurisdiction over Torres with regard to the 1976 agreement being sued on.

On its cross-appeal, PMI appeals the decision of the trial court that it is subject to the jurisdiction of the State of Kansas.

We affirm the trial court's decision in this regard. PMI entered into the same agreements as did Torres. It is an agreement with a Kansas resident, which was intended to be performed in full or in part in the State of Kansas. Under those circumstances, K.S.A. 1990 Supp. 60-308(b)(5) authorizes the exercise of jurisdiction by this state.

OTHER ISSUES

After the trial court dismissed the plaintiffs' petition, PMI and Torres filed a motion requesting they be awarded attorney fees pursuant to K.S.A. 1990 Supp. 60-211. The motion was denied because no bad faith on the part of the plaintiffs was shown. PMI and Torres have appealed the trial court's holding.

We have held that the petition did state a claim for relief and should be remanded for trial. In view of that decision, we affirm the trial court's denial of attorney fees to the defendants.

After the plaintiffs had filed their notice of appeal, PMI filed a motion with the trial court pursuant to K.S.A. 60-227(b) to take depositions and to produce documents. The trial court denied the motion, holding that, because the case was at the appellate stage, it had no jurisdiction to grant the motion. In view of our decision, it would appear that this issue is moot. We would point out that, in our opinion, K.S.A. 60-227(b) does provide the trial court with jurisdiction to permit depositions for cases on appeal if the trial court finds it is in the interest of justice. This case is being remanded for trial, and we assume whatever depositions PMI had in mind can be taken on remand. For this reason, we conclude that this issue is moot and we decline to discuss it in detail.

Affirmed in part, reversed in part, and remanded.